STEPHEN CABOT *vs.* NATHANIEL WINSOR & another.

The words "more or less" in a broker's note for the sale of goods, as follows: "Sold to N. W., for account of S. C., five hundred bundles, more or less, gunny bags," do not create a latent ambiguity, or authorize the introduction of parol evidence by the purchaser to show an understanding between the parties that he was to have either more or less than the number specified, as might reasonably be found necessary to fill a ship; although it appears that both parties knew at the time of the purchase that the goods were bought for the purpose of filling a ship, and that it was uncertain what number would be necessary. And, if the facts are not in dispute, it is for the court to determine what is a substantial compliance with the contract.

A contract for the delivery of five hundred bundles of gunny bags, more or less, is substantially complied with, although there is a deficiency of five per cent. in the number delivered.

CONTRACT to recover the price of four hundred and seventy-five bundles of gunny bags, sold and delivered by the plaintiff to the defendants.

At the trial in the superior court, the defendants admitted their liability to pay for two hundred bundles, but denied their liability to pay for any more. The plaintiff introduced in evidence a paper, of which the following is a copy: " Boston, Sept. 4 1858. Sold to Nath'l Winsor Jr., & Co., for account of Stephen Cabot, Esq., five hundred (500) bundles, more or less, gunny bags at 10c. per bag. Terms, 6 months. Simeon Sowle & Co., Brokers for the parties. Accepted, Nath'l Winsor Jr., & Co." The execution and delivery of this paper were not denied.

The plaintiff offered evidence to show that, at the time when this paper was signed, he had about five hundred and twenty-one bundles of gunny bags, of fifty bags each, all of which, on the day before, were at the Grand Junction Wharf in East Boston, and that he had given orders to one Sullivan, who was a compresser of gunny bags, and had a store on India Wharf, to take them to his store and there compress them into bales ; that, when the paper was executed, some of the bundles were at the Grand Junction Wharf, and some of them had already been taken to Sullivan's store, and others were on the way thither,

and that forty-five bundles had been compressed into bales and put into the store, and orders were at once given by the plaintiff to Sullivan not to compress any more of them. These facts, except the number already compressed by Sullivan, were known to both parties; and the plaintiff claimed and introduced evidence, under objection, to show that it was the uncompressed gunny bags which were the subject of the contract.

It appeared in evidence that both parties knew that the object of the defendants in making the purchase was to fill the ship Hesperus, then lying at India Wharf, and about to sail, and that at the time of the purchase it was uncertain what number of bundles would be needed for that purpose; and it was verbally agreed that they should be removed to the ship at the defendants' expense by the truckman already employed by Sullivan  Only two hundred bundles were actually taken on board of the Hesperus, that being all that proved to be necessary to fill the ship; and, of the remainder, amounting to two hundred and seventy-five bundles, some were left by the truckman in a storehouse on the wharf, which, by permission of the wharfingers, was temporarily used by various persons having business there, and the residue were taken into Sullivan's store, to keep them from the rain.

The defendants claimed that under the contract they were to have five hundred bundles, or more or less than that number, as might reasonably be found necessary to fill the ship; or at their election; and that, as they did not require any more than the two hundred bundles for that purpose, and as they never in fact received any more than that number, they were only bound to pay for two hundred. But *Lord*, J., ruled that there was no latent ambiguity in the contract, and that its construction was for the court; and he instructed the jury that the contract covered all the gunny bags which had not been compressed, and that a delivery of a part of the lot, under and in pursuance of the contract, was a delivery of the whole.

The defendants then offered to prove by parol that both parties understood the contract differently, and that it was not intended to cover more than enough to fill the ship; and they

offered to prove the declarations and acts of the plaintiff, before, at the time of, and after the making of the contract, for the purpose of showing that he so construed it; but the judge excluded the evidence.

The defendants, in view of the construction put upon the contract by the judge, requested him to instruct the jury that a delivery of four hundred and seventy-five bundles, or a readiness to deliver that number, was not a compliance with the contract, which called for a delivery of five hundred bundles, more or less, unless the defendants knew that the number was so much less than five hundred, and accepted the same as a compliance with the contract, or waived the non-compliance. But the judge declined so to rule, and instructed the jury that, if in point of fact the lot respecting which the parties were negotiating consisted of four hundred and seventy-five bundles, neither party knowing the precise number, there was no such discrepancy between the actual number and that stated in the contract, as to avoid the operation of the contract, and that the plaintiff was bound to deliver, and the defendants were bound to receive, the four hundred and seventy-five bundles, in execution of the contract.

The plaintiff was called as a witness in his own behalf, and testified that the defendants were to take delivery of the property where it was. The defendants claimed the right in cross-examination to put in the whole conversation in which this agreement was made, to affect the construction of the contract, as well as the question of delivery. The court ruled that it was not competent for the former purpose, but was competent for the latter purpose. The whole conversation was then put in, and the plaintiff testified that it was then agreed that the defendants were to return what they did not want to fill the ship; and the broker who made the agreement testified to the same effect; and the judge instructed the jury that this evidence could not be considered as controlling or affecting the construction of the contract as to the amount of goods sold.

The jury returned a verdict for the plaintiff, for the price of four hundred and seventy-five bundles, and interest; and the defendants alleged exceptions.

*A. A. Ranney,* for the defendants. 1. Such a construction should be put upon the contract as will best answer the intention of the parties, if the language used will allow it. In the present case, the understanding of the parties was clear that the defendants were to take only what would be necessary to fill the ship. 2. The words " more or less " in the contract mean more or less, at their election, the latter words being implied. *Cross* v. *Eglin,* 2 B. & Ad. 106. There is nothing in the contract tending to show that any particular lot of bundles was sold. 3. If the contract will admit of the construction contended for, the surrounding circumstances, and especially the conduct and subsequent acts of the parties, if not the declarations of the plaintiff, are material in determining the proper construction. *Shaw* v. *Stone,* 1 Cush. 228. *Knight* v. *New England Worsted Co.* 2 Cush. 271. *Goldshede* v. *Swan,* 1 Exch. 154. *Butcher* v. *Steuart,* 11 M. & W. 857. *Walrath* v. *Thompson,* 4 Hill, 200. 4. It was not competent for the plaintiff, on the principle adopted by the court, to show by parol what bags were embraced in the sale, or to add to the contract an agreement as to the delivery. 5. The alleged contract was but a bill of parcels, so far as relates to quantity and price, and was not subject to the rules of law excluding parol evidence. 6. After the plaintiff had put in a part of the conversation in which the agreement as to the delivery was made, the defendants were entitled to the whole of it, to be used for all purposes.

*C. B. Goodrich* and *C. A. Welch,* for the plaintiff.

BIGELOW, C. J. The paper or writing on which the plaintiff relies in support of his case is not a mere bill of parcels, designed to specify only the quantity and price of articles sold, nor was it so intended and understood by the parties. It is a written memorandum or contract of sale, drawn up by a broker as the agent of both parties, in the form of what is usually termed a " sold note," and designed to embody the terms and conditions of a bargain for the sale of merchandise, so as to bind the parties by an agreement valid and sufficient under the statute of frauds. To this contract, the defendants have bound themselves by their written acceptance of its terms.

We are unable to perceive any ground on which it can be held that this contract falls within any of the exceptions to the familiar and well established rule which excludes all parol evidence in the construction of the written agreements of parties. The language in which it is expressed is not technical, nor is it alleged to have any peculiar or local signification, or to have been used with reference to any custom or usage, which would vary or change its natural and ordinary meaning. Nor are the terms of the contract rendered uncertain or doubtful by reference to extrinsic facts, so as to create a latent ambiguity. The words " more or less," which seem to have given rise to the contention between the parties, have a plain, ordinary, and popular signification, and are often used in contracts relating both to real and personal estate. As applied to quantity, they are to be construed as qualifying a representation or statement of an absolute and definite amount, so that neither party to a contract can avoid it or set it aside by reason of any deficiency or surplus, occasioned by no fraud or want of good faith, if there is a reasonable approximation to the quantity specifically named as the subject of the contract. In sales of merchandise, especially in large quantities, where it is impossible to ascertain with precise accuracy the number or weight of the articles before concluding the contract for their purchase, it is necessary and usual to insert the words " more or less " or " about " in connection with the specific amount, which forms the subject of the contract, in order to cover any variation from the estimate, which is likely to arise from differences in weight, errors in counting, diminution by shrinking, or other similar causes. But in such cases, parol evidence is not admitted to show that the parties intended to buy and sell a different quantity or amount from that stated in the written agreement. On the contrary, it is held to be a contract for the sale of the quantity or amount specified; and the effect of the words " more or less " is only to permit the vendor to fulfil his contract by a delivery of so much as may reasonably and fairly be held to be a compliance with the contract, after making due allowance for an excess or short delivery arising from the usual and ordinary causes, which prevent

accurate estimate of the weight or number of the articles sold or as it is sometimes briefly expressed, it is " an absolute contract for a specific quantity within a reasonable limit." What is a reasonable limit and a substantial compliance with such contract, if the facts are not in dispute between the parties, is a question for the determination of the court. *Cross* v. *Eglin*, 2 B. & Ad. 106. *Moore* v. *Campbell*, 10 Exch. 323. *Bourne* v. *Seymour*, 16 C. B. 336. *Stebbins* v. *Eddy*, 4 Mason, 414, 419. *Pembroke Iron Co.* v. *Parsons*, 5 Gray, 591. Applying these rules to the contract in question, its construction is clear and unambiguous. It was an agreement for the sale of five hundred bundles of gunny bags, under which, by the term " more or less," the plaintiff had a right to deliver a number which should reasonably approximate to that number; and, in the opinion of the court, a variation of five per cent. in so large a quantity was not such a deficiency as to fall outside of the fair and reasonable limit of short delivery. By proof of a delivery of a portion of the four hundred and seventy-five bundles, and a readiness to deliver the residue of the lot, the plaintiff proved a full compliance with the terms of his contract.

The view we have taken of the contract and of its true construction renders it immaterial to determine the competency of the evidence, offered by the plaintiff, to show that the bags intended to be comprehended in the written contract were those in the possession of the plaintiff, which had not been compressed. Without this proof, the plaintiff was entitled to recover the full amount claimed by him. But this evidence was not offered to vary, explain or add to the written contract, but only to point out and designate the subject-matter to which the written agreement related. For this purpose, we are inclined to think it was competent. By offering it for this purpose only, it is clear that the plaintiff did not waive the right to object to proof on the part of the defendants which should entirely set aside the written contract for the sale of five hundred bales, and substitute in its place a verbal contract for the purchase of only two hundred. The case bears no resemblance to *Shaw* v. *Stone,* 1 Cush. 228.                           *Exceptions overruled.*