(40 App. Div. 208.)

### BLOOMINGDALE v. HEWITT et al.

(Supreme Court, Appellate Division, Second Department. May 8, 1899.)

SALE CONTRACT—CONSTRUCTION—PERFORMANCE.

A contract of sale by H. to B. of 25 cars of "number one hay" at a certain amount per ton, to be shipped, with provision that, if any part of it did not grade No. 1, B. was to have the privilege of having any part or all of the 25 cars graded, and, if any part of it did not "come up to the grade purchased (number one)," the price should be as set out, following which were prices for Nos. 2 and 3, with the further provision that drafts should be drawn on arrival of the cars, and, should not the grade turn out as No. 1, B. should accept the drafts, and draw on H. for any difference which might arise, does not allow of delivery of any kind of hay, but requires that the great bulk of it be No. 1; so that there is not a sufficient performance, more than half the hay tendered not being of that grade.

Appeal from judgment on report of referee.

Action by Charles A. Bloomingdale against Fay D. Hewitt and others. From a judgment for defendants, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Jesse Johnson, for appellant.

Hull Greenfield, for respondents.

CULLEN, J. This action was brought to recover damages for a breach of the following written agreement:

"This article of agreement, entered into this 25th day of January, 1896, between J. S. Hewitt & Sons, of Locke, N. Y., parties of the first part, and Charles A. Bloomingdale, party of the second part, witnesseth that parties of the first part agree to sell, and do hereby sell, to party of the second part, twenty-five (25) cars hay, or two hundred and fifty (250) tons, number one hay, at eighteen dollars ($18.00) per ton of (2,000 lb.) f. o. b. track Palmer's Dock, Brooklyn, N. Y., shipment to commence on or about February 1st, 1896, and to be delivered at the rate of six (6) to eight (8) cars per week, until said twenty-five (25) cars are delivered. It is further agreed by parties of the first part that, should any part of the hay not grade number one on the Brooklyn market, party of the second part is to have the privilege of having any part or all of the twenty-five (25) cars graded by the New York Produce Exchange official grader; and, further agreed, if any hay does not come up to the grade purchased (number one), the price shall be as follows: According to the official grading on number one, eighteen dollars ($18.00) per ton; on number two, seventeen dollars ($17.00) per ton; on number three, sixteen dollars ($16.00) per ton. It is further agreed by parties of the first part that all drafts are to be drawn on said twenty-five (25) cars on arrival of cars at Palmer's Dock; and, should not the grade turn out as number one, party of the second part will accept drafts, and draw back on party of the first part, for any difference which may arise, and drafts to be paid by parties of the first part on presentation. ·It is further agreed by party of the second part that, at any time before the contract is filled for above twenty-five (25) cars, should the United States government see fit to raise or increase the duty on hay, party of the second part agrees to allow parties of the first part to forward in the hay so as to avoid the raise in duty, but for no other reason.

The party of the second part agrees to purchase and does hereby purchase from the parties of the first part the above-mentioned quantity of hay at the aforenamed price.                  J. S. Hewitt & Sons.

                                  "Charles A. Bloomingdale."

Under this contract the defendants shipped to plaintiff during the month of February 13 car loads of hay. Three of these were accepted without inspection. The other 10 cars contained in all 1,126 bales of hay, 300 of which were graded as No. 1, 649 as No. 2, 142 as No. 3, and 35 of a still inferior quality. Part of this hay the plaintiff rejected, and refused to accept. On the defendants' refusal to furnish hay of No. 1 grade, the plaintiff brought this action for damages for the breach of the contract. The defendants counterclaimed for their damages by reason of plaintiff's refusal to accept the hay tendered.

The sole question presented on this appeal is the proper construction of the written agreement between the parties. The learned counsel for the respondents contends that under the agreement the defendants could deliver, and the plaintiff was bound to take and pay for, 250 tons of hay, whether the hay was No. 1, No. 2, or No. 3; and so the referee substantially held. The appellant's counsel contends that the contract was an agreement for the sale of 250 tons of No. 1 hay; and that, while the plaintiff was not at liberty to reject small quantities of hay of an inferior quality, still it was requisite that the great bulk or mass of the hay delivered should be of No. 1 grade. We think the appellant's is the true construction of the agreement. It might naturally be expected that in a large quantity of hay some of the bales would prove of an inferior quality, and the rejection of these by the plaintiff might entail much loss on the defendants, who had been to the expense of shipping the hay, and might be without a convenient market for its sale at the place of delivery. The provisions of the contract prescribing the prices to be paid for the lower grades of hay contemplated the case of only a slight or inconsiderable quantity of hay varying from No. 1 grade. They did not give the option to the defendants at their election to deliver any grade of hay they saw fit. The writing in terms prescribes the sale of 250 tons of No. 1 hay. The intention of the parties that the whole quantity was to be substantially of No. 1 grade is emphasized by the provision for payment. The defendants, as they shipped the hay, were to draw on the plaintiff for the full price of the shipment, treating the hay as all No. 1 grade; and, if any of the hay proved of inferior quality, the plaintiff was to draw on the defendants for the abatement in price. It is unreasonable to suppose that the parties contemplated that on a shipment wholly or substantially of hay of lower grades than No. 1 the plaintiff in the first instance should pay the full price for No. 1 hay. The contract is similar in principle to one to sell a specified number or quantity of articles, "more or less." The qualification "more or less" gives the vendor some latitude in the performance of his contract, but not the privilege of unbounded variance from the number or quantity specified therein. Under an agreement for the sale of 500 bundles of gunny bags, "more or less," it was held that the vendor must deliver a

number reasonably approximating to the number specified, and that a shortage of 5 per cent. in quantity was within a reasonable limit of variation. Cabot v. Winsor, 1 Allen, 546. Where a contract provided for the delivery of a specific lot of cattle, containing 262 head, "more or less," it was held that a tender of 178 head was not a sufficient performance of the contract, as the deficiency in number was too great. Tilden v. Rosenthal, 41 Ill. 385. It is not necessary for us to say what percentage of hay of inferior grades might have been delivered under the contract before us, but we are clear that, as more than half of the hay tendered was not of No. 1 grade, there was no sufficient performance of the contract.

The judgment appealed from should be reversed, and a new trial granted before a new referee to be appointed at special term; costs to abide the event of the action. All concur.