FERGUSON *v.* WEST COAST SHINGLE COMPANY.

Opinion delivered July 11, 1910.

1. SALES OF CHATTELS—ACCEPTANCE—DELAY.—Where it was the custom of a trade for the seller to notify the buyer by wire of the acceptance of his order, and the buyer waited four days without hearing from the seller, he was justified in treating the order as not accepted. (Page 31.)

2. SAME—VARIATION FROM ORDER.—Where defendants ordered two carloads of shingles, one to contain from 302 to 309 thousand shingles, and the other to contain from 273 to 298 thousand shingles, and plaintiff shipped one car containing 309 thousand shingles and another containing 328¾ thousand shingles, the contract was indivisible, and the defendants were justified in rejecting the whole quantity tendered and shipped as not being in compliance with the order. (Page 31.)

Appeal from Sebastian Circuit Court, Fort Smith District; *Daniel Hon,* Judge; reversed.

STATEMENT BY THE COURT.

Appellee sued appellants, alleging that on the 17th day of September, 1907, appellants bought of appellee 673,750 sixteen-inch red cedar shingles at $4.03 per thousand; that said shingles were diverted to the appellants on the 18th day of September, 1907; that appellants refused to receive them, to the damage of appellee in the sum of $162.60, for which appellee prayed judgment. Appellants' answer was a denial of all the material allegations of the complaint. The testimony on behalf of the appellee tended to prove that on the 17th of September, 1907, it sent out a "circular quotation," giving a statement of shingles owned by appellee which were then in transit to reconsigning points. The statement showed the kind, quality and quantity of shingles in car load lots to be designated in ordering by wire with certain code words which were given in the circular. The circular was sent out to about one thousand dealers throughout the country, and to appellants among them. On September 18 appellee received of appellants the following telegram:

"Fort Smith, Ark., Sept. 17, 1907.

"West Coast Shingle Co., Tacoma:

"Yours of the 12th; divert to Home Lumber Company, Van Buren, Arkansas, car Hash or Hawk and to us here car Heel or Hare at four three.

"Ferguson Lumber Company."

This telegram meant, according to the code words of the circular which appellants used in making the order, that appellants ordered of appellee two carloads of shingles at the rate of $4.03 per thousand, one car to consist of from 302 to 309 thousand of shingles and to be diverted from shingles then in transit to the Home Lumber Company of Van Buren, Arkansas, and one car to consist of from 273 to 298 thousand of shingles, and to be diverted from shingles then in transit to appellants at Fort Smith. Immediately upon the receipt of the telegram, appellee diverted two carloads of shingles of the quality designated from its stock in transit. One of these cars diverted contained 309 thousand shingles, and the other contained 328¾ thousand, at $4.04 per thousand. The appellee by letter of September 18, 1907, inclosed bills of lading for the shingles to the agents of the railway companies, instructing them to deliver the car containing 309 thousand shingles to the appellants at Van Buren as directed by the telegram, and to deliver the other car containing 328¾ thousand to appellants at Fort Smith. Appellee also on the same day sent by letter invoices of the cars diverted to appellants. On September 21, 1907, appellants sent to appellee a telegram instructing it to cancel their order and saying: "Have bought two cars which are already here." Appellee declined to cancel the order, and, after considerable correspondence, the result was that, appellants having refused to accept the cars, appellee sold them to another party for the best price it could obtain and sustained a loss in having to resell them of $158.45.

The testimony on behalf of appellants also tended to show that only one of the cars ordered by appellants was diverted to them, the other car was not embraced in the order at all. But, instead of one of the cars ordered by appellants, appellee substituted an entirely different car containing some 30 thousand more shingles than the car ordered. The witness who made the order for appellants testified in part as follows:

"It is important for a lumber dealer to get the exact cars of shingles that he orders. He wants to know the number of shingles in his cars at the time he buys them. There was just one order for the two cars of shingles. It takes as long as two months, and sometimes as long as a year to get a carload of shingles from Tacoma. I don't know whether these cars were in transit at the time the order was given. It is customary to send out the circular letter to dealers immediately after the cars are started en route. There were fifteen cars of shingles described in this circular. I know it is customary for sellers to send the same circular to a great many dealers throughout the country. I waited from the 17th until the 21st for word from plaintiff as to whether or not my order would be filled. It is customary for shingle sellers to notify purchasers by wire immediately after receiving an order to divert a car of shingles to the purchaser. Heretofore I have always received a message from the seller of shingles notifying me if my order would be filled, when ordering in the manner done in this case. I have had many years' experience in the lumber business, and it has always been customary for the seller to notify the buyer by wire of the acceptance of his order. I knew that the same circular had been sent to many other dealers, and did not know whether my order would be filled or not; and, after waiting four days for a reply, I got shingles elsewhere and cancelled this order. Some days later I received invoices for two car loads of shingles, but immediately returned same to the plaintiff, and notified them that I would not accept the shingles. After sending the telegram directing plaintiff to divert these two cars to me, I did not know whether or not they were going to accept the order; and, knowing that this was only a circular quotation, and not a private letter, and, knowing that these circular quotations were usually sent to hundreds of dealers and not being able to hear from the plaintiff in reply to my telegram, I bought shingles elsewhere, and cancelled this order before receiving any word whatever from plaintiff."

Appellee took nonsuit for the car that was not contained in appellant's telegram. Among the instructions given on behalf of appellants were the following:

"1.   If you believe from the evidence that the plaintiff, West Coast Shingle Company, sent to the defendants a circular letter containing a list of the cars of shingles in transit, owned by the

plaintiff; and if you further believe that defendants on the 17th day of September, 1907, wired plaintiff to divert to it a certain car or cars of shingles, and to the Home Lumber Company of Van Buren, Arkansas, a car or cars of shingles; and if you further believe that the plaintiff did not notify the defendant of its acceptance of defendant's order for said car or cars within a reasonable time, then the court instructs you that defendant had the right to disregard said order, and to purchase such shingles elsewhere, and your verdict under those circumstances should be for the defendant.

"2. If you believe from the evidence that the plaintiff sent out the circular letter in evidence, and that defendant wired plaintiff to divert to it certain cars of shingles; and if you further believe that the plaintiff did not divert to defendant the identical cars ordered by defendant, but attempted to divert to it another or other cars containing a different amount of shingles, then the court instructs you that there was no contract between plaintiff and defendant for the purchase of the shingles tendered, and your verdict must be for the defendant.

"3. If you believe from the evidence that the defendant wired the plaintiff to divert to it at Fort Smith a car or cars of shingles, designating in said telegram "Heel" or "Hare;" and if you further believe that the word "Heel" as used in said telegram referred to G. N. car No. 36058 containing 273,000 shingles. and the word "Heel" referred to C. B. & Q. car No. 95209 containing 289,000 shingles; and if you further believe that the plaintiff failed to divert either of said cars to defendant, but attempted to divert to it, in lieu thereof, N. P. car No. 27104 containing 328¾ thousand shingles, then the court instructs you that the defendant was not required to accept said shingles or any part thereof, and your verdict must be for the defendant."

The jury returned a verdict in favor of appellee for $77.80. The motion for new trial contained, among others, the following grounds: 1. Because the verdict is contrary to law; 2. Because the verdict is contrary to the evidence. The motion was overruled, and judgment for appellee for the above sum.

*Hill, Brizzolara & Fitzhugh,* for appellants.

The unreasonable delay excused defendants from receiving the goods. 47 Ark. 419. The defendants were not required to

accept the shingles or any part thereof.  81 Ark. 29; 90 Ark. 272;
71 Ark. 292; 73 Ark. 584; 15 Atl. 87; 62 N. Y. 151; 103
Mass. 327.

WOOD, J., (after stating the facts).  The judgment should
have been in favor of appellants for two reasons:

1.  The undisputed evidence showed a custom "for the seller
to notify the buyer by wire of the acceptance of his order,"
where the order, as in the present case, is made by wire.  Ap-
pellee did not comply with this custom, and appellant, not know-
ing whether his order would be filled or not, after waiting four
days, cancelled same.  Under this custom there was no completed
contract between appellants and appellee for the purchase of the
shingles.  Appellee did not notify appellants by wire of the accep-
tance of the latter's order, and appellants had no notice that their
order by wire had been accepted until they received a letter
from appellee containing invoices a week or ten days after the
order had been telegraphed.  Appellants had the right to rely
upon the custom and to cancel their order after waiting four
days.  For, as a matter of law, appellants were warranted in
treating a delay of four days to answer the telegram by like
method as unreasonable.  The nature of the business, the manner
in which it was conducted when orders were made by wire, and
the usage of the trade, as shown by the evidence, made the delay
of appellee to answer by wire unreasonable.  Kempner v. Cohn,
47 Ark. 519.

2.  The telegram constituted but a single order for shingles
although it specified two cars each for separate destinations.
The appellee had no right to ignore the terms of the order and
send appellants an entirely different car from that contained in the
order.  By so doing appellee failed to accept the contract pro-
posed by appellants.  Consequently, there was no meeting of
the minds of the parties upon the cars that were diverted to
appellants, and they were not liable.  The contract proposed by
appellants was single and indivisible.  Union Trust Co. v. Weber-
Seely Hdw. Co., 73 Ark. 584; Sutherland Med. Co. v. Baltimore,
81 Ark. 229; Wood v. Kelsey, 90 Ark. 272.  Any material varia-
tion from it as to the specific quantity of shingles ordered
justified appellants in rejecting the whole quantity tendered and
shipped as a compliance with the order.  See Rommel v. Wingate,

103 Mass. 327 and cases cited; *Perry* v. *Mount Hope Iron Co.,* 15 Atl. Rep. 87; Hunt on Tender, § 216.

The testimony on behalf of appellants tended to show that they would not have made the order for one car and not the other. The witness said: "It was important for a man to get the car containing the number of shingles he orders. If he did not get the car he ordered, it would be very hard for him to tell exactly how his stock is going to be, and he certainly uses discretionary power in the amount he wants, or they might send any car."

The court instructed the jury on behalf of appellants in accord with the doctrine here announced, but they ignored the instructions. The verdict for the reasons stated was contrary to the evidence and the law. The judgment based upon such erroneous verdict must therefore be reversed, and the cause is dismissed. .