## Stevenson *versus* Burgin.

*Contract for sale of definite quantity of goods, construed.*

A contract for a certain fixed quantity of merchandise, to be delivered on shipboard by the vendor, is not complied with by a tender of bills of lading for a larger quantity, and a demand of payment therefor at the price agreed on cannot be enforced by the vendor.

CERTIFICATE from the Supreme Court at *Nisi Prius.*

This was an action of *assumpsit* by John B. Stevenson against 'George H. Burgin, George H. Burgin, Jr., Charles F. Burgin, John N. Burgin, and William M. Burgin, partners trading as Burgin & Sons.

The plaintiff charged in his declaration that defendants, January 30th 1863, at the city of Philadelphia, bargained for and bought of plaintiff, and that plaintiff at request of defendants then sold to defendants a large quantity of goods, to wit, one hundred tons of oil-cake at the rate of $48.50 per ton, cash, to be delivered by plaintiff to defendants free on board vessel for London, and to be paid for by defendants to plaintiff on delivery. And in consideration thereof, and that plaintiff at the like request of defendants had then promised to deliver said goods to defendants free on board vessel for London as aforesaid, defendants then promised plaintiff to accept said oil-cake from plaintiff, and to pay him for the same on delivery. And although plaintiff afterwards, June 6th 1863, was ready and willing, and then tendered and offered to deliver said goods to defendants free on board vessel for London, to wit, at, &c., and then requested defendants to accept the same, and pay him for same as aforesaid, yet defendants not regarding, &c., did not, nor would at time when they were so requested, or at any time before or afterwards, accept said goods or any part thereof from plaintiff, or pay him for the same, but then wholly neglected and refused so to do. To which was added a count for goods bargained and sold, laying the damages at $10,000. The defendants pleaded *non assumpsit* and set-off.

On the trial the plaintiff gave in evidence an agreement signed by defendants, dated January 30th 1863; and an agreement signed by plaintiff, dated same day, for the purchase and sale of 100 tons of oil-cake at $48.50 per ton, cash, to be delivered free on board vessel for London; and called John B. Stevenson, Jr., son of plaintiff, who proved that he signed the contract for the plaintiff. "Was present when the freight was engaged for this oil-cake. It was made at Peter Wright & Sons' office; can't recollect the time. The engagement was made between Mr. Wright and Mr. Burgin. It was shipped. Can't recollect the day when

[Stevenson *v.* Burgin.]

the first shipment of the cake was made. Saw it put on the drays and the drays go away. Saw the drays alongside the ship at Hammett's Screw Dock, Kensington. There were either 30 or 50 bags. Saw three loads containing 30 bags. Accompanied father and saw him leave the bills of lading for the oil-cake, and also bill of sale at Burgin & Sons' office, in Arch street below Second, sometime in March 1863, in the evening, between the hours of six and seven o'clock. Saw a man in the office engaged at the desk with some books, but cannot say whether it was a clerk or one of the partners.

"From the time of the contract plaintiff had the oil-cake on hand ready at any time for delivery. These are the bills of lading."

Plaintiff then gave in evidence bill of lading in triplicate, signed by Peter Morgan (master of ship Henry Cooke), for 952 bags oil-cake, or 96 tons, 13 cwt., 13 lbs. freight at 35 shillings per ton 2240 lbs. gross, dated March 6th 1863.

Also the bill of sale of 107 tons, 129 lbs., dated January 30th 1863:—

Philadelphia, January 30th 1863.
Messrs. Burgin & Sons bought of John B. Stevenson,
    952 bags oil-cake, weight, gross, 216,509 lbs.
    Tare 2½ lbs. per bag     .     .     2,380

Weight, net     .     .     .     . 214,129 lbs., or
$107\frac{129}{2000}$ tons @ $48.50 per ton 2000 lbs., $5216.87 cash.

Cross-examined: "Can't tell the names of the men who worked the cake. Saw part of the oil-cake put on board the vessel. Do not recollect the date, but it is in the memorandum book. Each dray took 10 bags. Cannot tell which of the Mr. Burgins made the contract. Know we made some shipments afterwards, and some before, as we are constantly making them. Can't say whether we shipped any between 30th January and 6th March."

Plaintiff then gave in evidence the following letter from defendants to plaintiff, dated March 7th 1863:—

"Philadelphia, March 7th 1863.
"Mr. J. B. Stevenson—

"Dear Sir: We find this morning that you called and left the bills of L. at our store last evening, after business hours, and while our clerk was engaged in closing up, and too late for us to make up invoice for yesterday's mail. Besides which we find that your bill calls for more oil-cake than we agreed to purchase. We therefore decline to receive it, or the B. of L., and return you them enclosed herein, and shall assume no control over the goods.

[Stevenson *v.* Burgin.]

"We sincerely regret that through your misfortune you have not been able to comply with your contract with us.

"Respectfully yours,

"BURGIN & SONS."

Plaintiff also called one of the firm of Peter Wright & Sons, shipping and commission merchants, who testified as follows:—

"Sometime in February Mr. Stevenson and a son of Dr. Burgin called at our office and asked if we could ship 100 tons of oil-cake to London in the ship Henry Cooke. I told them we could, but could not engage to send it within a fixed time, but if the vessel was not ready in ten days we would send it to New York for them free of expense. Mr. Burgin expressed himself satisfied with the arrangement, and engaged the freight. My book states this was on the 18th February. I called with the captain of the Henry Cooke on the plaintiff in reference to sending down the cake, but cannot tell at what time this was. These are the bills of lading that were delivered from our office. I had no other business with Mr. Stevenson than to let him know. We always send shippers word when the vessel is ready; it is our custom."

Cross-examined: "It was not, I think, within the ten days when the cake was sent to the vessel; a portion of it came before the ballast was all out. I don't think any other vessel was going to London at that time, or between the 30th of January and the 6th of March. I saw a portion of the oil-cake put on board the vessel."

Plaintiff then gave in evidence the plaintiff's reply, dated March 9th 1863, to defendants' letter of March 7th 1863:—

"Philadelphia, March 9th 1863.

"Messrs. Burgin & Sons—

"Gentlemen: Your note of the 17th instant is duly received. In reply I have to say that the oil-cake purchased by you from me, January 30th 1863, was ready for delivery according to contract, on board the ship upon which you engaged freight for the same; but it was some twenty days or more before the shipping merchants with whom you had made the engagement for the freight got a vessel up for London, and the very moment I was informed that the vessel was ready I commenced sending the oil-cake to her for shipment, but the captain or mate in charge refused to receive the cake on board; this occurred more than once. No effort was spared by me to put the oil-cake on board of the vessel, but the delay occurred from the fact of the freight engaged by you not being ready. I had nothing to do with the engaging of the freight. You engaged the vessel, and all delay that has happened has been through the failure of her owners or charterers employed by you to have her ready in time.

[Stevenson v. Burgin.]

"I shall hold the bills of lading subject to your order, upon payment of the contract price, until Wednesday, the 11th instant, at three o'clock; and I shall then dispose of the same for the best price I can get, and shall hold you responsible for all loss.

"Very respectfully yours,
JOHN B. STEVENSON."

Also the following note from defendants to plaintiff, dated March 10th 1863; and note from plaintiff to defendants, dated March 11th 1863 :—

"Philadelphia, March 10th 1863.
"Mr. J. B. Stevenson—

"Dear Sir : Your favour of yesterday duly to hand. We are rather surprised that you should assert that the oil-cake you shipped per 'Henry Cooke' was under any contract of ours with Messrs. P. Wright· & Sons, since the bills of L. are made out in your name, and to your order. If Messrs. Wright have any contract binding upon us, we are ready to execute it. However, we see no utility in continuing a correspondence where we differ so much, as we consider ourselves neither legally nor morally bound to take the cake as it was billed by you to us. As, however, you notify us that you will sell it to-morrow, we beg leave to make you the following offer for it, viz. : We will give you $48.50 per ton of 2240 pounds for the lot, which is precisely what we understood was to be the price of the 100 tons to be shipped in ten days from the 30th January last. This offer we make without prejudice to ourselves, but in sincerity, by way of compromise, and then the loss will be ours, since we have already lost about $500 by non-shipment at time stipulated.　　　　Respectfully yours,
"BURGIN & SONS."

"Philadelphia, March 11th 1863.
"Messrs. Burgin & Sons—

"I must decline your offer as made in your note of the 10th instant, and shall sell the cake as stated in my note of the 9th, and the statements in which I must again reassert, merely adding that the ton is 2000 pounds.

"Very respectfully yours,
"JOHN B. STEVENSON."

Plaintiff then gave in evidence broker's sold note, dated March 16th 1863, signed by Cabot & Pemberton, for about 107 tons of oil-cake, now on board the brig Henry Cooke for London, at $44.50 per ton of 2000 pounds, sold to Messrs. Jefferis & Co. on account of plaintiff: and called.Isaac C. Rich, who said: "I have been with Mr. Stevenson as clerk for some ten years. I attended to the shipping of the oil-cake, which was done in February and the early part of March 1863. The first was

[Stevenson *v.* Burgin.]

shipped while the vessel lay at Richmond.  Mr. Wright and the captain of the vessel called at our place between one and two o'clock on Saturday afternoon, and directed me to send the oil-cake to Hammett's Screw-Dock wharf that same afternoon.  I collected a portion of the drays, and sent off 50 bags that same day.  After being absent two hours the drays returned with the cake.  The draymen informed me that the mate would not receive the cake, as he was not aware of the arrangements made by the captain.  We sent a little the next week to the same place.  The vessel was then moved down to just above Market street wharf, where the balance was delivered.  We sent it as fast as it could be received, as we were anxious to get it out of our way.  I went several times to see Mr. Wright to get the cake out of our way; our place was very much crowded."

Cross-examined: "It might have been two weeks after the Saturday spoken of before it was all put on board the vessel. But little of the cake was put on board at Kensington.  The captain would not receive it every day."

John B. Stevenson, Jr., was recalled, and testified that "after this, oil-cake depreciated in value, the broker selling the lot in question for $44.50 per ton of 2000 pounds, and we sold some afterwards for fifty cents less per ton, and it went still lower.  It is not customary to sell oil-cake at auction."

Cross-examined: "I went into the counting-house of defendants with my father when the bills of lading were delivered.  The foreign mail closed at nine o'clock in the evening; there was sufficient time to make out two invoices.  The invoice for the oil-cake would be very short.  If we got our letters in before nine o'clock P. M., they always went by that steamer."

The plaintiff having closed his testimony, the defendants moved for a nonsuit under the Act of 1836, which the learned judge granted, saying: "In my judgment the plaintiff cannot sustain this action, since he has not confined himself to the amount of oil-cake contracted for.  Let a nonsuit be entered, with leave to plaintiff to move to take it off and for a new trial."

Plaintiff subsequently moved to take off nonsuit and for a new trial, and filed the following reasons, viz. :—

The learned judge erred in directing a nonsuit to be entered—

1. On the ground that the plaintiff was bound to tender the exact quantity of goods bargained and sold, as stated in the contract.

2. Because it was a question for the jury as to the reasonableness of the tender of the goods under all the circumstances of the case.

3. Because the plaintiff, even if not entitled to recover upon the special count, was entitled to recover on the count for goods bargained and sold.

4. Because the plaintiff was entitled to recover at least the

difference between the price of the 100 tons of oil-cake, as specified in the contract, and the price at which the same quantity was afterwards sold.

5. The learned judge erred in directing a nonsuit to be entered.

These motions being overruled, the case was removed to the court in banc by the plaintiff, who averred—1. That the learned judge, before whom the cause was tried, erred in directing a nonsuit to be entered.

2. In not submitting to the jury the question as to the reasonableness of the tender under all the circumstances of the case.

3. In directing a nonsuit, on the ground that plaintiff was bound to tender the exact quantity of goods bargained and sold.

4. In not permitting the case to go to the jury upon the count for goods bargained and sold.

5. In not permitting the plaintiff to recover at least the difference between the price of the 100 tons of oil-cake, as specified in the contract, and the price at which the same quantity was afterwards sold.

*Samuel C. Perkins* and *Samuel H. Perkins*, for plaintiff in error.—1. The nonsuit was entered because the plaintiff tendered a small quantity in excess of the contract, viz., $7\frac{129}{2000}$. The article is put up in bags, and it is impossible to ascertain with exactness the precise number of bags required to make a ton, as some contain more and some less. In this case the delivery was necessarily hurried from the delay that had been experienced. The plaintiff was bound to deliver 100 tons, and the defendant was bound to accept and pay for that number. He might refuse to accept less, and might refuse to pay for more. Even in making a tender of money in payment of a debt, where the utmost strictness is required, it has been repeatedly decided that a tender of too large a sum does not vitiate the tender. The third resolution in Wade's Case, 5 Co. 115, is in point. See also Douglas v. Patrick, 3 T. R. 683; Hubbard v. Chenango Bank, 8 Cowen 101; Bevans v. Rees, 5 M. & W. 306.

2. The delivery of the bill of lading endorsed to defendants was a delivery of the goods: Hilliard on Sales 103; Parsons's Mercantile Law 346–50; Bateman's Commercial Law 172. Especially as by the terms of this contract itself, the goods were to be delivered on board the vessel, and the only means of delivery to the defendants was by the bill of lading; and as the seven tons excess does not vitiate the delivery of the 100, plaintiff was entitled to recover at least the difference between the price of the 100 tons specified in the contract, and the price for which the same quantity was afterwards sold.

3. Plaintiff was entitled to recover on the count for goods bargained and sold. Here was a distinct issue for the jury, the

plaintiff asserting that he bargained and sold goods to the defendants, and the defendants by their plea denying the fact. The proof was uncontradicted; and if the plaintiff did more than was required of him, it cannot annul the bargain and sale of the 100 tons: Addison on Contracts 46.  The reasonableness of the tender was a question of fact for the jury.  Ten or twenty pounds over the 100 tons clearly would not vitiate the tender; and if that amount would not, it would be ·for the jury to say what would, under the circumstances, taking into consideration the nature of the article to be delivered, the urgency of the vendee, and the efforts of the plaintiff to meet his wishes; and especially in view of what appeared most conclusively in evidence, that the plaintiff was compelled by the vendee's agent, the shipping merchant, to send the goods in parcels just as it suited the latter's convenience.  Had the vessel which was selected by the vendee been ready to receive the goods in a proper way from the vendor in one lot, and at one time, there would not have been this difficulty as to the exact quantity.  The defendants themselves or their agent, the shipping merchant, occasioned this difficulty; and it was peculiarly a question for the jury whether, under all the circumstances, the plaintiff had not done all in his power to fulfil his contract—whether the tender was not reasonable.  It was not for the court to determine as a point of law.

*Thomas S. Smith*, for defendants in error.—The plaintiff was to deliver 100 tons of oil-cake on board of a vessel for London, which was to be done after the contract was made.  He was to put it on board free, that is at his expense, and with his labour, care, and attention.  He was to weigh it, and see that the weight was no less and no more than 100 tons.  He had the entire control of that part of the business.  The defendants had no duty in that respect.  It was the plaintiff's duty to have the weight ascertained before he sent the cake to the ship, or if weighed at the wharf or shipping point, and it was found that there was more than the defendants had agreed to purchase, he should have sent the excess to his place of business, and shipped only 100 tons.  But instead of doing so, he put on board cake which the defendants had not agreed to purchase, to the value, according to the contract price, of $366.87, and sent the bills of lading, as a delivery of the goods, with a bill claiming payment for the whole.  If he had sent the bills of lading as a delivery of 100 tons only, with a bill claiming the price of 100 tons, according to the contract; or if, upon the refusal of the defendants to accept the bills of lading as a delivery, and to pay for the excess over 100 tons, he had promptly withdrawn his claim for the excess, it might be urged that he had complied with his contract.

[Stevenson *v.* Burgin.]

But he insisted in his letter of the 9th of March, that the defendants should take the bills of lading as they were, and pay for the whole quantity of cake he had shipped, and threatened defendants that if they did not, before the 11th of March, at three o'clock, he would sell it at their risk. This was a plain attempt to force the defendants to take and pay for $7\frac{129}{2000}$ tons of cake which they had not agreed to purchase, at a cost of $366.87.

If the defendants had accepted the bills of lading and assumed control of the goods, they could not have defended themselves against a claim for the full amount of the plaintiff's bill. But they refused, and on their refusal the question in this case is raised.

The question is, whether a vendor of a limited and certain quantity of goods can compel the purchaser to take and pay for an additional quantity which he did not purchase. The present case differs in essential particulars from the cases cited by plaintiff. In this case the tender was made as the execution of a contract for the delivery of a certain quantity of goods in a certain manner. The plaintiff here, as part of their tender, endeavoured to force the defendants to take and pay for goods which they had not purchased. The offer in payment of a debt of more money than is due is an advantage to the creditor, for he can take at least all of his demand, but in this case the tender was disadvantageous to the defendants, for it required them to pay over $360 more than they contracted to pay. Men in business are not always, nor even often, prepared to pay such a sum upon an unexpected demand. If the plaintiff could rightly force upon the defendants $360 worth of merchandise, and exact payment in cash upon delivery, there is no definite limit to which he might not go, and the defendants might have been called upon to pay for goods not contracted for, to the amount of thousands of dollars. If the plaintiff's principle is established as law it will greatly embarrass the business of the whole trading community, and bring many to ruin.

The case of Roberts *v.* Beaty, 2 Penna. Rep. 63, is more to the point than the above cases. The count in plaintiff's declaration for goods bargained and sold was not supported by any evidence. The contract proved was not a completed contract. It was executory. It was not a sale of 100 tons of oil-cake simply, but a sale of the cake when delivered by the plaintiff on board of a vessel free of charge to the defendants. There was something to be done by the plaintiff before he could call on the defendants for payment. But what he had to do was not done as the contract required, the defendants were put under no obligation, and until they were, there was no bargain and sale

[Stevenson *v.* Burgin.]

completed. The plaintiff's claim had no merits, and he could not by a form of pleading give himself a cause of action.

The plaintiff, by his fifth exception, claims that if he did not justly fulfil his part of the contract according to its terms, and failed to extort a bargain and payment from defendants for goods they did not purchase, they were in the wrong for not allowing him to do so, and that he ought to be compensated for his loss in the attempt, as fully as if he had acted in good faith.

The opinion of the court was delivered, February 13th 1865, by Strong, J.—By the contract between the parties the plaintiff undertook to deliver to the defendants one hundred tons of oil-cake, free on shipboard a vessel for London, for which the defendants engaged to pay cash on delivery, at the rate of forty-eight dollars and fifty cents per ton. Soon afterwards the vessel was engaged by the defendants, and the plaintiff put on board one hundred and seven tons $\frac{129}{2000}$ in bags, taking bills of lading in his own name, for 952 bags oil-cake, or 96 tons, 13 cwt. 13 lbs. gross, the tons being each 2240 pounds. This, after deducting the tare, was equal to one hundred and seven statute tons and one hundred and twenty-nine pounds. These bills of lading the plaintiff then sent to the defendants, accompanied with a bill of sale of nine hundred and fifty-two bags oil-cake, weighing, tare deducted, 107 tons 129 pounds, at $48.50 per ton. Total price $5216.87. The defendants refused to receive the bills of lading, and returned them to the plaintiff with a note, informing him that his bill called for more oil-cake than they had agreed to purchase, and that they declined to receive it, or to assume control of the goods. To this note the plaintiff replied, that he should hold the bills of lading subject to the defendants' order for two days, and should then sell for the best price he could get, and hold them responsible for all loss. Accordingly, the bills not having been accepted, the plaintiff sold the oil-cake for $44.50 per ton, and brought this action, in which he seeks to recover the difference between the price for which it was sold and the contract price of the one hundred tons.

In view of this state of facts it is plain that there never was any delivery of the quantity stipulated for in the contract, nor any tender of it. Instead of the quantity which the defendants had agreed to receive, a larger quantity was offered, and accompanied with a bill demanding payment for the whole. It was in effect, whatever may have been intended, an effort to compel the defendants to take more than they had agreed to buy, and thus substantially change the subject of the contract. There was no offer to deliver the nine hundred and fifty-two bags as one hundred tons, nor to deliver any less number or quantity, or to set apart a portion of the entire quantity in satisfaction of the plain-

[Stevenson v. Burgin.]

tiff's duty.   On the contrary, when his attention was called to the fact that the defendants had not agreed to take so much, he persisted in holding the bills of lading as they were, subject to the defendants' order, and never intimated to them that they could have a less quantity, or any quantity, unless they paid at the rate of $48.50 per ton for the whole one hundred and seven tons.

In our opinion this was no such compliance on his part with the contract as to enable him to maintain an action against the defendants, either for the stipulated price, or for not receiving the articles for which they had bargained.   It is true, that if a party under obligation to pay money tender more than the whole debt, the tender is generally valid, but the money must be offered solely in discharge of the debt.   If offered in discharge of the debt, and also to impose a liability upon the creditor, it has no validity.   It has even been held that the tender of a sum exceeding the debt, accompanied with a demand that the creditor shall make the change and return the balance, is in law no tender: Betterbee v. Davis, 3 Camp. 70; Robinson v. Cook, 6 Taunt. 336; Brady v. Jones, 2 Dow. & Ry. 305.

The thing to be tendered or delivered in this case was not money, but a defined quantity of a specific article.   The defendants were under no obligation to receive less or more.   What might amount to a sufficient tender of money will not always constitute a tender of chattels.   That can be no tender of specific articles which does not place the other party in such a position that he has nothing to do but to signify his acceptance in order to have the ownership of the chattels vest immediately in him.   If anything remains to be done with them, as, if they are to be separated from a larger mass, before they could become the property of the other party, there can be no tender or delivery until such separation has been made; and this for the most satisfactory reason.   A tender of specific articles discharges the obligation without being followed up as a tender of money must be, and it vests the ownership of the thing tendered instantly in him to whom the tender is made, if he is under obligation to receive the article.   In Barns v. Graham, 4 Cowen 452, which was a suit on a note payable in lumber, it was held that to make a tender good, the promissor must have separated the lumber which he intended to tender in payment of the note.   In Smith v. Loomis, 7 Conn. 110, it was laid down that where there is a contract for the delivery of specific articles at a time and place specified, the absence of the promissee at such a time and place does not dispense with such acts on the part of the promissor as are necessary to vest the property in the promissee; that the mere fact that the promissor had the articles at the time and place appointed, ready to be delivered, is not sufficient to vest

[Stevenson *v.* Burgin.]

the property in the promissee, and that to constitute a good defence to an action on such a contract, the articles must be set apart and designated so as to enable the promissee to distinguish them from others. The same doctrine was ruled in Nichols *v.* Whiting, 1 Root 443; so in Veazy *v.* Harmony, 7 Greenl. 91. It was then no compliance with what he was bound to do in order to give him a right of action against the defendant, nor was it a tender of compliance that the plaintiff had on board the vessel a larger quantity of oil-cake than the contract called for, since the one hundred tons were not separated from the bulk. And still less was it compliance when the bills of lading were endorsed, accompanied with a bill for one hundred and seven tons. This was equivalent to saying to the defendants, "if you pay for one hundred and seven *tons* you may have these bills of lading, if you do not, the endorsements to you are not to take effect." This was no delivery of anything while the bills remained unaccepted.

It is almost superfluous to say that the same reasons which prevent any recovery upon the first count of the declaration, are fatal to the plaintiff's success upon the count for goods bargained and sold. The contract was executory; for the one hundred tons of oil-cake were never separated from a larger quantity, and the sale was not complete until delivery. There was no error, therefore, in directing the nonsuit.

Judgment affirmed.