JOHN ROMMEL, JR., *vs.* WILLIAM A. WINGATE & another.

The plaintiff in New York wrote to the defendants in Boston, offering to sell them coal, and stating that he had a vessel of 375 tons which he could load " on Monday." The defendants telegraphed in reply, on the Monday next after the date of the letter, " Ship that cargo 375 tons immediately." The plaintiff did not begin to load till nine days afterwards, and then shipped a cargo of 392 tons. *Held,* that the defendants were not bound to take it.

CONTRACT for refusing to receive a cargo of coal, alleged to have been purchased by the defendants, who were coal dealers

in Boston, doing business under the name of Wingate & Field, from the plaintiff, who was a coal dealer in New York.

At the trial in the superior court, before *Dewey*, J., the plaintiff introduced evidence tending to show that, on March 5, 1868, which was Thursday, the defendants wrote to him, "We want you to ship us at once a cargo of Lackawanna coal, half stove and half broken, and send it at once, as we are nearly out. Answer by return mail if you can send it;" that he replied by letter dated the next day, "Yours 5th received. The best we can do is to ship you half Scranton grate, half Wilkesbarre stove at $5.25, or grate $5.00, stove $5.50. There is not a pound of Lackawanna to be had, and will not be for some time. The Wilkesbarre stove is very nice, and I have that on the wharf and ready to go on board. We have a vessel of 375 tons which we can load for Boston at $3 freight, load on Monday. This will be as soon as a vessel can get into the port on account of ice. There is a panic here on coal, and a boat of stove, which succeeded in getting up to the city, was sold this morning at $7 per ton. If this vessel is a little too large, likely some of your neighbors will be glad to help you out. If we don't hear from you to the contrary by telegram to-morrow, shall take up the vessel and go ahead loading her. If you want a smaller vessel, say so in your telegram;" but it did not appear when this letter was mailed or received; that on March 9, 1868, which was Monday, the defendants sent to the plaintiff about noon a telegraphic despatch, "Do not ship;" and about an hour later sent a second despatch, "Ship Wingate & Field that cargo coal 375 tons immediately;" that these despatches were received by the plaintiff in New York soon after one o'clock on the day they were sent; that on the evening of that day he engaged a vessel then lying at Staten Island to proceed to Elizabethport, the place where Scranton and Wilkesbarre coal was received, to load with coal for the defendants, and gave the master his shipping order early on the morning of March 10; that "the vessel left Staten Island at night on March 10, but was detained by obstructions, so that she did not enter the harbor at Elizabethport till noon on the 11th, and the order was handed in on that

day; that by the customs and regulations in force at Elizabeth-
port, well known and recognized, each vessel is obliged to wait
for its turn in loading; that, at the time of the arrival of the
vessel, there were a large number of vessels that had precedence
of her, and on account of the ice in the harbor, and the necessity
of waiting for the loading of the vessels having precedence, she
could not commence loading till March 18, nor complete the
same till March 20; that the vessel sailed for Boston as soon as
loaded, and, having been delayed by head winds, arrived there
April 4;" that between the 9th and 14th of March one of the
defendants called several times at the office of the plaintiff's
agent in Boston, and inquired why their bill of lading did not
come; that as early as Thursday, March 12, the plaintiff's agent
told the defendants that he had information that their cargo was
loading, and the defendants said they might not want the cargo
unless they had the bill of lading on Saturday, March 14;
" that the defendants had not at this time any information as to
what vessel had been taken up, except as inferred from the tele-
graphic despatches and letters of March 5 and 6, and that there
were no other communications, except as hereinbefore stated,
between the parties, from March 9 to April 4;" that the defend-
ants refused to take the coal; and that it was sold at a loss.

" Upon the plaintiff's evidence, it appeared that there was no
unavoidable delay in engaging a vessel after the receipt of the
second telegram on March 9, and no unnecessary delay on the
part of the master in proceeding to Elizabethport, or in load-
ing there, or in proceeding to Boston, the port of destination,
but that the delays were without fault on his part or of the
plaintiff. There is a communication by telegraph between
New York and Elizabethport, and conveyance by steam by
land and by water. The time occupied in passing from one
place to the other is about three quarters of an hour by land and
one quarter of an hour by water. The quantity of coal shipped
by the plaintiff to the defendants on board the vessel was, as
stated in the bill of lading, 392 tons."

At the close of the plaintiff's evidence, the defendants con-
tended " that if the second telegram, taken in connection with

the letters of March 5 and 6, made a valid contract for a cargo of coal, it was for a cargo of 375 tons, to be shipped on board a vessel on that day at Elizabethport, taking on board or ready to take on board her cargo, and, as the cargo tendered to the defendants did not come within that description, the action could not be maintained; that, taking the said letters and telegrams together, they did not authorize the shipment of a cargo of 392 tons of coal, nor the shipment on board a vessel not at Elizabethport on March 9, nor ready to enter that day; and that the jury should be instructed to return a verdict for the defendants."

By agreement of the parties, the case was reported for the determination of this court. If, upon such of the evidence introduced by the plaintiff as was competent, the jury would not have been authorized to return a verdict for the plaintiff, judgment was to be entered for the defendants; otherwise a new trial to be had.

*J. Nickerson*, for the plaintiff, cited *Pembroke Iron Co.* v. *Parsons*, 5 Gray, 589.

*J. C. Dodge*, for the defendants.

Morton, J. The evidence of the contract entered into by the parties to this suit is contained in the letter of the plaintiff of March 6, 1868, and the second telegraphic despatch sent by order of the defendants on March 9, 1868. The letter of the defendants of March 5, containing an order which the plaintiff did not comply with, and the first telegraphic despatch, are immaterial. The plaintiff's letter of March 6 was an offer to ship to the defendants the coal therein described, at the prices and upon the terms named, and was of no effect until accepted by the defendants. The minds of the parties did not meet in any agreement, until the second telegraphic despatch was sent. This despatch, and the letter of March 6, therefore, are the only evidence before us of the contract, upon the proper construction of which the rights of the parties depend. The contract of the defendants was, in substance, that they would purchase a cargo of 375 tons of Scranton and Wilkesbarre coal, at the prices named by the plaintiff, to be shipped on board a vessel ready to be loaded at once. It is obvious that both the quantity of

coal and the time of delivery were essential elements of the contract. The plaintiff writes, " We have a vessel of 375 tons which we can load for Boston at $3 freight, load on Monday." The reply of the defendants is, " Ship that cargo coal 375 tons immediately." This bound the defendants to receive a cargo of 375 tons to be loaded at once. It did not bind them to take a larger cargo, or one which could not be shipped substantially as speedily as proposed by the plaintiff in his letter. If by a change of circumstances the plaintiff was unable to comply with this order of the defendants, he should have so informed them. He had no right to substitute a larger cargo, deliverable at a more remote time, in place of the cargo ordered by the defendants; and the defendants were not obliged to receive the substituted cargo upon its arrival in Boston. Upon the case reported, there must be    *Judgment for the defendants.*