JOHN B. MERCIER

*vs.*

JAMES MURCHIE'S SONS COMPANY.

Washington.    Opinion June 6, 1914.

*Assumpsit.    Burden of Proof.    Contract.    Delivery:    Memorandum of Agreement.
Sale.    Scale.*

1. The defendant having admitted sale and delivery to itself of 690,000 feet of logs, an amount in excess of that mentioned in the contract, the question relating to the form of action and the admission of the memorandum of agreement are answered in favor of the plaintiff.

2. Whenever personal property is sold to be delivered to a certain person, or at a certain place, for the buyer, a delivery to such person or at such place is a completed delivery to the vendee.

3. Proof of such delivery raises a presumption in favor of the vendor that the property had been accepted by the vendee.

4. These rules of law, however, do not apply when the amount of property claimed to be delivered is largely in excess of that contracted for, as the buyer may reject the excess.

On report.    Judgment for plaintiff in the sum of $1331.50 with interest from the date of the writ.

This is an action of assumpsit upon an account annexed and on the money counts, to recover the sum of $5591.18 for logs sold and delivered.    The defendant pleaded the general issue.    At the conclusion of the evidence, by agreement of the parties the case was reported to the Law Court for its determination upon so much of the evidence as is legally admissible.

The case is stated in the opinion.

*Reed V. Jewett, and R. J. McGarrigle,* for plaintiff.

*Curran & Curran,* for defendant.

SITTING: SAVAGE, C. J., SPEAR, CORNISH,. KING, BIRD, PHILBROOK, JJ.

PHILBROOK, J.   The plaintiff brought this action in assumpsit, on account annexed and on the money counts, offering in evidence, under the latter, proof of the same items as appeared in the account annexed.   Under objection on the part of the defendant, the plaintiff offered a certain written memorandum of . agreement which appears to have been signed by the defendant but not by the plaintiff.

The account annexed is as follows:

"Calais, Maine, Nov. 9th, 1912.

James Murchie's Sons Co.
              To John B. Mercier,          Dr.

1911

| May 1, | To | 349,300 | ft. | logs | 5731 | pieces | from | D. Delaney |
| | " | 489,384 | " | " | 6362 | " | " | C. McPike |
| | " | 21,000 | C | " | 521 | " | " | C. McPike |
| | " | 117,000 | ft. | | 1872 | " | " | H. Smith |
| | " | 119,000 | " | " | (1321 | " | " | W. Metcalf |
| | | | | | ( 822 | " | " | A. Metcalf |

|  |  |  |  |
|---|---|---|---|
| | 1095,684  ft.      16,629 pieces at $10 1-2 | $11,504.68 |
| To | 2 1-9 M feet of logs 74 pieces from Lyons at $9.00 | 19.00 |
| " | reserved by James Murchie's Sons Co. in the winter of 1910 for driving logs left Jim Brown | 50.00 |
| " | amt. paid for board—32 weeks | 96.00 |
| | | $11,669.68 |

Credit

| By | draft | $2000. | |
| " | " | 2000. | |
| " | paid Webber | 2078.50 | 6,078.50 |

$5,591.18"

The memorandum of agreement is as follows:

## "MEMORANDUM OF AGREEMENT

Made and concluded this 23rd. day of Nov. 1910 between J. B. Mercier of the first part and James Murchie's Sons Co. of the second part.

*Witnesseth,* That the said Mercier of the first part agrees to put his teams into the logging woods the ensuing winter on land furnished by himself and cut, haul, mark and deliver in Big Lake properly boomed pine and spruce logs & cedar butts where they can be seen and scaled about 500 M ft. Saw Logs agree to haul none but good sound merchantable Logs, to run up each tree to inches at the top end, and to haul the full length of the tree in one log, also agree to long-butt all the Hemlock, and it is understood that any hemlock not properly long butted shall be not scaled. All logs hauled by said Mercier to be marked thus $1 \frac{X}{X}$ in two places on each and every log: No pine to be hauled less than 12 ft. long 10 inches top end. No spruce to be hauled less than 20 ft. long 8 inches top end. All logs hauled by said Mercier to be scaled by James S. McCrea or some other competent person to be appointed by said Murchie's Sons Co. whose scale shall be final between the parties to this agreement one half the expense of scaling to be paid by each party.

In consideration of the above being performed, said Murchie's Sons Co. of the second part, agree to pay said Mercier Ten 50-100 dollars per M feet for spruce, pine and cedar, thus hauled and delivered as before mentioned, free of all expenses to said Murchie's Sons Co.

For any cash advances made, or cash liabilities that said Murchie's Sons Co., may come under for said Mercier he agrees to pay one per cent advance for commission and interest until payment on said logs becomes due, which will be

> One quarter July 1-11
>
> One quarter Aug. 1-11          James Murchie's Sons Co.
>
> One quarter Sept. 1-11                  By W. A. M.
>
> One quarter Oct. 1-11

James Murchie's Sons Company, agrees to accept a four month's draft for one thousand dollars, January first 1911, and a like amount for February first 1911, and a like amount for March first 1911, with the understanding that the said drafts are to be renewed at maturity, for the same time, viz four months, provided always that the logs are landed as per within agreement.

JAMES MURCHIE'S SONS Co.

By W. A. M."

The plea is the general issue and at the close of the testimony the following stipulation and agreement was made;

"Questions of law arising of sufficient importance to justify the same, and by consent of the parties, this cause is reported to the Law Court for its determination upon so much of the evidence as is legally admissible."

The plaintiff claims sale and delivery to the defendant of 1,095,684 feet of logs, the defendant admits sale and delivery of 690,000 feet, the difference of 405,684 feet is in dispute, and "the point for this court to determine is the number of logs the Murchie Company actually did receive from Mr. Mercier and to fix the value thereof," is the way the plaintiff states the problem in his brief. When the testimony was taken out in the court below the defendant objected to the introduction of the memorandum of agreement, and made other objections relative to introduction of testimony, but in their brief counsel for defendant present no argument or citations of law in support of their objections, and dismiss the subject in these words: "It does not seem necessary to discuss the numerous details of testimony, as it is all before the Court and in our view of the case a large part of it is not material. The form of action and other technical questions are also omitted from this argument because the parties and their evidence, legal and otherwise, are in Court now and if possible their legal rights should be determined without further litigation."

The defendant having admitted sale and delivery to itself of 690,000 feet of logs, an amount in excess of that mentioned in the contract, we are of the opinion that the questions relating to the form of action and the admission of the memorandum of agreement are to be

answered in favor of the plaintiff. *Marshall* v. *Jones*, 11 Maine, 54; *White* v. *Oliver*, 36 Maine, 92; *Holden* v. *Westervelt*, 67 Maine, at page 450, and cases there cited.

The memorandum obligated the plaintiff to "cut, haul, mark and deliver in Big Lake, properly boomed, pine and spruce logs and cedar butts, where they can be seen and scaled, about 500 M ft." Whenever personal property is sold deliverable to a particular person or at a particular place for the buyer, a delivery to such person or at such place is a completed delivery to the vendee. This principle is so well settled as to hardly require citations. *White* v. *Harvey*, 85 Maine, 212. Proof of such delivery, moreover, raises a presumption in favor of the vendor that the property has been accepted by the vendee. *White* v. *Harvey*, supra; *Nichols* v. *Morse*, 100 Mass., 523. These rules of law, however, do not apply when the amount of property claimed to be delivered is largely in excess of that bought or contracted for, as the buyer may reject the excess if he chooses, but if he accept he must pay for that excess, whatever the same may be reasonably worth. *Rommel* v. *Wingate*, 103 Mass., 327; *Pittsburgh Plate Glass Co.* v. *MacDonald*, 182 Mass., 593; 35 Cyc. 205. The plaintiff seeks to bring the whole transaction within the above rule of delivery and acceptance because of the use of the words "about 500 M ft." in the memorandum of agreement. We do not think his contention upon this point can be sustained. In *Cabot* v. *Winsor*, 83 Mass., 546, the court held that in sales of merchandise in large quantities where it might be impossible, or practically so to ascertain with precise accuracy the number or weight of the articles, before concluding a contract for their purchase, it is usual to insert the words "more or less" or "about" in connection with the specific amount which forms the subject of the contract, in order to cover any variations from the estimate which are likely to arise from differences in weight, errors in counting, or other similar causes. When such words are used the court held that the contract was for the quantity or amount specified, and that the effect of the words is only to permit the vendor to fulfill his contract by a delivery of so much as may be reasonably and fairly held to be a compliance with the contract, after making due allowance for the excess or short delivery arising from the usual and ordinary causes which prevent an accurate estimate of the weight or number of the articles sold. The Maryland Court in *Salmon* v. *Boykin*, 7 Atl., 701, held that the word "about" as used in

a contract for the shipment of "about" so many tons of goods, means a margin for a moderate excess or diminution of such quantity. In *Maine Red Granite Company* v. *York*, 89 Maine, 54, our court held that the use of the word "about," in an alleged written guaranty to pay for goods sold to a third person, showed that entire accuracy was not intended, but that if goods were sold and delivered very much in excess of the amount named, it might, perhaps, be regarded as evidence of bad faith, and require a limit to be fixed to the guarantor's liability. In the case at bar the plaintiff, as we have said, by virtue of the word "about" seeks to bring himself within the legitimate results of the rules of law above stated, but we cannot adopt this claim, especially in a transaction of such large proportions, where the property which the plaintiff claims to have sold is more than double the amount mentioned in the contract and the alleged excess has so large a monetary value.

That there was a delivery and acceptance of the amount of lumber called for by the contract there is no controversy. Our inquiry relates to the excess, and as to that we hold that none of the presumptions of delivery and acceptance arise in favor of the plaintiff, as he has no contract with the defendant for such a great excess, but that he can only recover for such excess as he may show, by a fair preponderance of the evidence in the case, was actually delivered to and accepted by the defendant. To revert again to the contention as stated in plaintiff's brief, this court is to determine the "number of logs the Murchie Company *actually* did receive from Mr. Mercier and to fix the value thereof." In reaching a conclusion as to the excess logs, which are really the only ones in controversy, we shall not regard the constructive delivery of the excess logs at Big Lake as actual delivery to the defendant, for there was no contract between the parties whereby the delivery of the excess logs at Big Lake was to be a delivery to the defendant. Actual delivery of the excess logs must be shown by the plaintiff in order to recover payment for them. Otherwise the defendant would have no opportunity to exercise his legal right to reject the excess logs if such were his desire.

The burden being on the plaintiff to prove the amount of the excess logs and their delivery to and acceptance by the defendant, what evidence does he offer for that purpose? We cannot be expected to go into all the details of the testimony but will point out the salient features. The plaintiff sub-contracted with five persons to

cut and haul those logs which he claims the defendant received. Those persons were David De Long, Henry Smith, Charles McPike, Amos Metcalf, and Wesley Metcalf. In the account annexed we find the name of David Delaney but evidently this was intended to be David De Long. From him the plaintiff claims in the account annexed to have received 349,300 feet and delivered the same to the defendant. De Long testifies that he delivered the logs at east branch of the Musquash river in the winter of 1910-11 and that they were driven from that river in the following spring. The amount is corroborated by a scale bill, plaintiff's exhibit 3, made by J. S. McCrea, but the latter testifies that when he was making this scale it was a basis for settlement between the plaintiff and his contractor, and not for the defendant company. As to delivery of these logs to the defendant De Long gives no testimony although he says each log bore defendant's mark. It is to be observed that McCrea made his scale by using the count furnished by De Long, after scaling a good number of the logs and then making an estimate.

According to the account annexed the plaintiff obtained from Henry Smith 117,000 feet of logs which he claims were delivered to defendant. Plaintiff took Smith's own scale for that amount and charges defendant according to that scale. Smith delivered the logs at East Musquash river and says the following spring they left his landing but further he knows nothing about the delivery to the defendant. He says, however, that each of his logs bore the defendant's mark.

The next logs charged for in plaintiff's writ are the Charles McPike logs, amounting, in two items, to 510,384 feet. Mr. McPike landed his logs also in the East Musquash river and drove the river the following spring. He says he made a clean drive of the river and landed the logs in Big Lake, boomed in two booms. From that time he has no personal knowledge of what became of the logs. He says the Mercier logs were mixed with logs belonging to others. As to the quantity of his logs he says he never had a scale but the amount was the result of his judgment. As affecting the amount of lumber which plaintiff obtained from McPike bearing defendant's mark, the defendant calls attention to the testimony of Mr. Edgerly, scaler for the Webbers who owned the stumpage which McPike cut. That witness says that the total stumpage was 563,785 feet and that the Murchie mark was only on 224,890 feet. The defendant urges

that the amount which plaintiff claims was cut from the Webber land and bearing the Murchie mark, amounted in all to 510,384 feet and that this discrepancy of 285,494 feet, goes a long way toward accounting for the absence of excess logs now sued for and which defendant denies were ever delivered.

The plaintiff charges the defendant with 45,000 feet of logs obtained from Amos Metcalf and 74,000 from Wesley Metcalf, the two lots being totaled in the account annexed as 119,000 feet. Both of the Metcalfs testify that their logs bore defendant's mark and were delivered at East Musquash river, Amos Metcalf says part of his logs were landed on the ice and part on meadow land, and says "when the stream opened some of them went down stream." Apparently his testimony gives no further proof of delivery to the defendant. His logs were scaled by himself and he declared that there were 45,000 feet. Wesley Metcalf worked on the drive the next spring and says it was a clean drive as far as he went which was "pretty near down to Musquash Bridge." He also scaled his own logs and says they amounted to 74,000 feet.

The next witness called by plaintiff was George McKechnie, a lumberman, who testified that he saw the logs which McPike boomed in Big Lake. He also saw them in Long Lake after McAllister had towed them through the Narrows between Big Lake and Long Lake. It appears by the testimony of this witness that inside of two weeks after the logs were towed into Long Lake, and tied up, there was a storm which scattered the logs on the southeast side of the lake. He says they were scattered "quite a lot" but that he secured them as well as he could under orders from the plaintiff, who still seemed exercising control over them down to this point. The fastening thus made by McKechnie was broken later and again the logs were blown across the lake, and again the witness says they were badly scattered. He says he attempted to boom the logs but did not get them all.

Henry McAllister, called by the plaintiff testified that it was his business to tow logs from the mouth of the Musquash through connecting lakes and rivers and put them over Grand Falls at Baileyville and that he did this work in 1911. He says he cannot state positively whether or not he took a boom of logs down Big Lake upon notification of McPike in the summer of 1911, but that it was his duty to take all logs that were boomed in any of these lakes to the Grand Falls. He says that if a boom of logs were delivered at the

mouth of the Musquash river in the summer of 1911 it would be cleanly driven by him to Grand Falls. He says he would not expect that more than 200 or 300 pieces would be left behind.

Mr. F. B. Dightman, called by the plaintiff, testified that he is the boom master at Milltown, and in that capacity it was his duty to take charge of all logs turned over the dam at Baring, sort and raft them, and turn then over to their owners. When he was testifying it was admitted that he sorted and delivered to defendant 74 logs in the summer of 1911. He says those logs would run thirty to the thousand or upwards, and they had a rabbit track mark on them, which elsewhere in the testimony appears to have been the Lyons mark, and were evidently the logs sued for in plaintiff's writ as the 74 pieces at nine dollars per thousand. He also says that he is in the employ of the Calais Middle Boom Company whose duty it was to make a clean drive from Baring to the point of delivery to the owners, and that if in the summer of 1911 logs bearing the mark of defendant were delivered to the Boom Company that such logs would be delivered to the defendant. For some unaccountable reason plaintiff's counsel, at this important juncture did not ask this witness the total number of logs delivered in 1911 to the defendant upon which was to be found the defendant's own mark. If plaintiff actually delivered to the defendant all the logs he claimed to have done, including these excess logs, a fitting question to the witness would seem to have been so important that it would not have been overlooked by his able counsel.

The defense denies receiving so many logs as the plaintiff has charged for. The defendant's scaler, McCrea, testifies to finding in Long Lake, 612,000 feet of logs bearing the defendant's mark but defendant's counsel, in his brief, admits that the defendant had received 690,000 feet and claims to have paid for them. The testimony does not state whether this last figure included or excluded the Lyons logs. We do not feel that under all the testimony in the case the plaintiff has sustained his contention of actual delivery of all the excess logs for which he has brought suit.

We allow the plaintiff as follows:

| | | |
|---|---|---|
| 690 M. logs at | $10.50 | $7245.00 |
| 2 1-9 M. Lyons logs, at | $9. | 19.00 |
| Reserved from transaction relating to driving logs | | 50.00 |
| Board bill for men | | 96.00 |
| | | |
| Contra | | $7410.00 |
| Cash received | | 6078.50 |
| | | |
| Balance. | | $1331.50 |

*The judgment will therefore be for plaintiff in the sum of $1331.50 with interest from the date of the writ.*