# Meyercord Co., Inc., Appellant, *v.* P. H. Butler Co.

*Sales—Signs—Delivery to carrier—Excess quantity—Sales Act of 1915, P. L. 543, sections 44 and 46.*

Judgment was properly entered for defendant non obstante veredicto in an action against the purchaser upon a contract for the sale of a number of signs, where the evidence was that delivery was made to a carrier, and the purchaser refused to accept them from

the carrier because the number of signs shipped was in excess of the number contracted for.

Delivery to a carrier for transportation to the purchaser is delivery to the purchaser only when the goods correspond in kind, quality and quantity with those described in the contract.

Section 44 and 46 of the Sales Act of 1915, P. L. 543, are declaratory of the law as it was in Pennsylvania before the act was passed.

Argued April 29, 1922. Appeal, No. 26, April T., 1922, by plaintiff, from judgment of C. P. Allegheny Co., July T., 1920, 2497, non obstante veredicto on verdict for plaintiff, in the case of the Meyercord Co., Inc., v. P. H. Butler Co. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Assumpsit upon a contract of sale. Before EVANS, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff in the sum of $328.28. The court subsequently entered judgment for the defendant non obstante veredicto. Plaintiff appealed.

*Error assigned* was the judgment of the court.

*William S. Doty,* and with him *Earl F. Reed,* for appellant.—The contract was not rendered void by shipment of overage, but simply voidable, and the defendant lost his right to rescind by failure to give notice of that intention: Dailey v. Green, 15 Pa. 118; American Watch Tool Co. v. Reed Mfg. Co., 18 Pa. Superior Ct. 24; Baltimore Brick Co. v. Coyle, 18 Pa. Superior Ct. 186.

*Alexander C. Tener,* and with him *Wilson & Evans,* for appellee.—If delivery on shipment is not made in accordance with the terms of the contract, it is not considered delivery to the buyer, and title and risk remain with the seller: 24 Am. & Eng. Encyc. of Law 1071; Stevenson v. Burgin, 49 Pa. 36.

OPINION BY GAWTHROP, J., July 13, 1922:

Defendant is a dealer in groceries in the City of Pittsburgh, and plaintiff is a manufacturer of window signs. On September 23, 1918, defendant gave the following order to plaintiff:

"Order No. 1321                    Date Sept. 23, 1918.
          "The Meyercord Co. (Inc.)
                    "Chicago, Ills. U. S. A.
"Sold to P. H. Butler Co.,
"At          Pittsburgh, Pa.
"Ship via Express          When     At once.
     "Terms 1% cash     10 days or 30 days net from date of invoice F. O. B. Chicago.

"As it is impossible to make the exact quantity, it is agreed that an overage or shortage, not to exceed 10%, shall be accepted as filling this contract. All contracts are taken contingent upon strikes and accidents beyond our control.

          "Not subject to countermand.

"Quantity                          Description
"125 Window signs as per sketch     'Fine Groceries'
"75          Dittoe—                'Teas & Coffees'
     "At 1.35 per sign

                              "P. H. Butler Co.
"PHC                               Coffee
"Accepted
     "Salesman."

On September 26, 1918, plaintiffs wrote defendant acknowledging receipt of the above order, and stating that it would have prompt attention. On November 22, 1918, plaintiffs delivered to the Chicago office of the American Express Company for transportation to defendant 180 window signs marked "Fine groceries," and 117 window signs marked "Teas & Coffees." The signs were never delivered to defendant by the express company. Claim was made on defendant for the price of the 297 window signs, which amounted to $495. Defendant

refused to pay and suit was brought. At the trial, the above facts were admitted and plaintiff and defendant presented points for binding instruction. Plaintiff's point was affirmed and the jury was directed to render a verdict for plaintiff for 220 signs, the number ordered. After argument upon a motion for judgment n. o. v., the trial judge entered judgment in favor of the defendant. Hence this appeal.

Appellant contends that (1) the delivery of the signs to the express company was a delivery to defendant; that (2) it was defendant's duty to accept or reject the signs delivered to the express company; that (3) defendant was bound to plead the overage shipment, and that it was too late to raise the question on the argument of the motion for judgment n. o. v., and that (4) judgment n. o. v. cannot be used to take away the right of rebuttal. We will discuss propositions one and two together. Paragraph 1 of section 46 of the Sales Act (1915 P. L. 543) provides as follows: "Where, in pursuance of a contract to sell or a sale, the seller is authorized or required to send the goods to the buyer, delivery of the goods to carrier, whether named by the buyer or not, for the purpose of transmission to the buyer, is deemed to be a delivery of the goods to the buyer, except in the case provided for in section nineteen, rule five, or unless a contrary intent appears." Section nineteen, rule five has no application here and no contrary intent appears. This section is merely declaratory of the law as decided by our courts prior to the passage of the act. Paragraph 2 of section 44 of the same act provides as follows: "Where the seller delivers to the buyer a quantity of goods larger than he contracted to sell, the buyer may accept the goods included in the contract and reject the rest, or he may reject the whole. If the buyer accepts the whole of the goods, so delivered, he must pay for them at the contract rate." This also is declaratory of the law as found in the decisions in this jurisdiction and most others. These two sections of the act should be

read and construed together. The delivery to a carrier described in the first paragraph of section 46 is a delivery to the buyer only when made in pursuance of the terms of the contract of sale. There is no constructive delivery where the seller delivers to the carrier goods differing in kind, quality or quantity from those described in the contract. The contract prescribes the scope of the carrier's authority to accept goods as the agent of the buyer. This construction is in harmony with the law, as declared by the authoritative text writers as follows: "Ordinarily a delivery of goods by the seller to the carrier designated by the purchaser......is a delivery to the purchaser, the carrier becoming agent or bailee of the buyer. Delivery should be of the proper quality and in the proper quantity": 35 Cyc. "Sales," 193. In Williston "Sales" (edition of 1909), we find the following: "If the goods which the seller sends are not those ordered or even if there are too many, the property will not pass." "If the delivery or shipment is not made in accordance with the terms of the contract it is not considered that the delivery is made to the buyer's agent and the title and risk remain with the seller": American and English Encyc. of Law (second edition) vol. 24, page 1071. See also Benjamin "Sales" (edition 1883) paragraph 1030. Our own Supreme Court has long recognized this principle, as appears by the decision in Stevenson v. Burgin, 49 Pa. 36, in which plaintiff agreed to deliver 100 tons of oil cake to defendant f. o. b. at Philadelphia for London; 107 tons were delivered, and a bill of lading was sent to defendant, together with a bill for the 107 tons. On suit for breach of the contract a nonsuit was entered and the Supreme Court in affirming, said: "In our opinion there was no such compliance on his (vendor's) part with the contract as to enable him to maintain an action against the defendants, either for the stipulated price, or for not receiving the articles for which they had bargained......The thing to be tendered or delivered in this case was not money, but a defined

quantity of a specified article. The defendants were under no obligation to receive less or more......That can be no tender of specific articles which does not place the other party in such a position that he has nothing to do but to signify his acceptance in order to have the ownership of the chattels vest immediately in him." The theory of the law is that the delivery of a larger quantity than that ordered or contracted for must be regarded as a new offer by the seller rather than a shipment in acceptance of an offer by the purchaser to buy. Under this view, title to the signs, which were the subject of this suit, did not pass to defendant upon delivery to the express company at Chicago. The clear and precise statement of the learned trial judge cannot be improved upon. He said: "In this case the buyer never had an opportunity to accept the whole or to accept the amount of his contract, or to reject the whole. A delivery of the exact amount of the contract to the American Express Company would have been a delivery to the buyer, but surely a delivery of a number of signs which he had a right to reject or accept, or partially reject or partially accept, could not be construed to be a delivery to him."

As to plaintiff's contention that defendant was bound to plead the overage shipment, and that it was too late to raise the question on the motion for judgment n. o. v., the obvious answer is that the delivery of the signs to defendant was part of plaintiff's case and the delivery proved must be in accordance with the terms of the contract of sale. Such a delivery was not proved. On the other hand, it was admitted on the record at the trial that goods in excess of the amount ordered were shipped from Chicago, and that they were not delivered. It was entirely proper for defendant to take advantage of the insufficiency of plaintiff's case by presenting a point for binding instruction. It was not required to allege or prove overage or any other matter as a reason for refusal to pay for the signs.

Plaintiff's last contention was that, by the affirmance of his point for binding instruction, he was deprived of the right to present evidence in rebuttal. The answer to this contention is, first, that defendant presented no evidence, and, second, that plaintiff asked for a binding instruction in his favor and got it.

The judgment is affirmed.