SMITH, FITZMAURICE CO.

*vs.*

M. S. HARRIS

Aroostook.      Opinion August 3, 1927

*In an action for goods sold and delivered, where the goods are ordered to be shipped later, a delivery and acceptance must be shown.*

*Where there is no acceptance, the vendor's remedy is a special action for breach of implied contract to accept.*

*Where in pursuance of a contract to sell the seller delivers the goods to a common carrier, whether named by the buyer or not, for transmission to the buyer, the seller in the absence of any evidence to the contrary is presumed to have unconditionally appropriated the goods to the contract and such delivery will be presumed to be a delivery to the buyer and title passes; but such appropriation is authorized only by the vendor's compliance with the contract in kind, quality and amount.*

In the instant case the defendant was under no obligation to reply to plaintiff's letter of September 20, whether it be construed as meaning that plaintiff could and would ship 16 dozen only and inquired if defendant would accept, i. e., an offer to make a new contract for 16 dozen, or as meaning that plaintiff was about to ship more than the order and would do so unless immediately advised by wire not so to ship, i. e., a notice of an intention not to comply with the order unless notified to comply.

The plaintiff did not comply with the order, the defendant rightfully refused to accept; title did not pass and the action cannot be maintained.

On general motion by defendant. An action of assumpsit for goods sold and delivered. Defendant contended that there had not been an acceptance by him of the goods. Verdict for the plaintiff for the full amount claimed and defendant filed a general motion for a new trial. Motion for a new trial granted.

The case fully appears in the opinion.

*J. Frederic Burns*, for plaintiff.

*Herbert T. Powers*, for defendant.

SITTING: WILSON, C. J., PHILBROOK, DEASY, STURGIS, BASSETT, JJ.

BASSETT, J.  Action of indebitatus assumpsit with account annexed.  The account  is

"1920 September 16th.  To 16 dozen men's
fleece union suits sold to you at your re-
quest @ $24.00 . . . . . . . . . . . . . . . . . . . . .          $384.00
To interest since due and demanded  . . . . .          137.24
                                                                      ――――――
                                                                      $521.24"

Writ dated September 4, 1926.  Verdict for the plaintiffs for $521.24.  The case comes up on general motion.

In March, 1920, the defendant at his store in Van Buren gave the plaintiffs' traveling salesman an order for 12 dozen union suits at $24 per dozen to be shipped to the defendant sometime in the Fall from the factory of the manufacturers in Amsterdam, N. Y. f. o. b. there.

On September 16, 1920, the salesman from his employers' office in Boston wrote the defendant that he had an order on file for 12 dozen union suits but that the mill that season had packed the goods in 16 dozen cases and said "If for any reason you do not want these goods advise us by wire as we cannot afford to take back any goods once they are shipped."  The defendant received  the letter on September 18, and on the same day wrote to the plaintiffs that he had that day wired "Cannot accept now.  Will let you hear from me later."  The plaintiffs received this letter September 24th, but did not receive the telegram.  Whether or not the telegram was sent was controverted.

On September 20 the plaintiffs notified the manufacturers to ship to the defendant at Van Buren the 16 dozens and shipment was made accordingly on that day.  On September 24 the plaintiffs replied to the defendant's letter of September 18 that having requested in their

letter of the 16th a reply by wire and having waited a reasonable time and not having heard by the 20th, they had ordered the goods shipped from the manufacturers and insisted on payment of all the goods.

The defendant refused to take the goods from the station on their arrival in Van Buren, and they remained in the possession of the carrier.

The plaintiffs wrote on November 11, 1920, requesting payment to which the defendant replied on November 20 that he could not under any circumstances accept the shipment.

In 1921 suit was brought by N. T. Stevens, an attorney in Van Buren, the writ being entered at the November term 1921 of the Supreme Judicial Court and at the November term, 1922, entry of neither party was made. On June 14, 1922, the attorney and defendant agreed that the goods should be taken from the depot to the defendant's store, the freight, storage and court expenses equally divided between the parties and the defendant to pay $10.50 per dozen if he accepted them. The defendant paid the freight, storage and court expenses amounting to $133.40. The case was hauled to his store, deposited on the sidewalk and opened. The defendant found them, as he testified and there was corroborative evidence, of inferior quality, badly woven and discolored. He called Mr. Stevens to examine them and refused to accept. The goods were placed in the basement of the store, where they remained until 1925, and were then hauled away to a dump.

The account annexed is for goods "sold" which word might mean "bargained and sold" or "sold and delivered." Account annexed is used as a substitute for the common counts for goods bargained and sold or sold and delivered. *Dudley v. Paper Company,* 90 Me. 260; *Kelsey v. Irving,* 118 Me. 310. The declaration in this case is good for either kind of action. But the case was tried below and argued before the Law Court on the theory that it was an action for goods sold and delivered, the plaintiffs claiming that the goods had been accepted by the defendant. Unless there were acceptance so that an action to recover the price of goods sold and delivered could be maintained, an action for goods bargained and sold could not be, since this is a case where goods were ordered and later shipped to the one giving the order. In such case, if the goods are not de-

livered and accepted, the vendor's remedy is a special action for breach of the implied contract to receive and accept. *Greenleaf* v. *Gallagher*, 93 Me. 549; *Bixler* v. *Wright*, 116 Me. 133; *Chase* v. *Doyle*, 121 Me. 204.

We therefore consider the action on pleading and proof as for goods sold and delivered.

The case is governed by the common law. The Uniform Sales Act was enacted in Maine in 1923.

It is well settled law both in England and the United States that where in pursuance of a contract to sell the seller delivers the goods to a carrier, whether named by the buyer, *State* v. *Intoxicating Liquors*, 98 Me. 464, or not, for the purpose of transmission to the buyer, the seller, in the absence of any evidence to the contrary, is presumed to have unconditionally appropriated the goods to the contract and such delivery will be presumed to be a delivery to the buyer and title passes. "The Sales Act in so expressly providing is merely stating what was well settled law." Williston on Sales, Second Edition, sec. 278.

"In order for the property to pass however the seller must have acted in conformity with the authority given him by the buyer. If therefore the goods which he sends are not of the kind or quality ordered, the property will not pass. * * * For the same reason the property will not pass if the goods are too many." Williston on Sales, Supra; *Hart* v. *Mills*, 15 M. & W. 85, 71 Rev. Rep. 578 (1846), 4 dozen wine ordered, 8 shipped; *Cunliffe* v. *Harrison*, 6 Exch. 903, 86 Rev. Rep. 543 (1851) 10 hogsheads claret ordered, 15 shipped; *Levy* v. *Green*, 8 E. & B. 575, 112 Rev. Rep. 699 (1857), the additional articles were crockery of a perfectly distinguishable pattern, (the opinions of Lord Campbell C. J. and Wightman J. were upheld on appeal in Exchequer Chamber, 1 El. & El. 969, 117 Rev. Rep. 552); *Huddleston* v. *Bernstein* 148 Ark., 1 (1921), 228 S. W. 208, $89 of paint ordered, $99.50 shipped; *Rommel* v. *Wingate* 103 Mass. 327 (1869) 375 tons coal ordered, 392 shipped; *Dormer* v. *Thompson*, 2 Hill 137 (1841) 250 barrels ordered, 260 shipped, (the judgment was reversed in 6 Hill 108); *Lamborn* v. *Suggerman Bros.* 240 N. Y. 118 (1925), 147 N. E. 607, 38 A.L.R. 1540, 1200 boxes apples ordered, 1770 shipped; *Myercord* v. *P. H. Butler Co.* 79 Pa. Super. Ct. 473 (1922) 200 window advertising signs ordered, 297 shipped; *Perry* v. *Mt. Hope*

*Coal Co.*, 16 R. I. 318 (1888), 15 Atl. 87, 30–40 tons scrap iron ordered, 53 17-20 tons shipped; *Barton* v. *Kane*, 17 Wis. 37 (1863), 84 Am. Dec. 728, 5000 cigars ordered, 5625 shipped.

This court has not passed upon the question of delivery to a common carrier. It has upon a contract to deliver personal property sold to be delivered to a certain person at a certain place and held that the presumption of acceptance by the vendee on proof of delivery to such person and place does not apply "when the amount of property claimed to be delivered is largely in excess of that bought or contracted for." *Mercier* v. *Murchie's Sons Co.* 112 Me. 72. The words "largely in excess" were properly used in that case because the contract was for "about 500 thousand feet" of lumber and it was contended that the amount delivered was within the agreement. But in none of the authorities cited is any distinction of the amount of excess made and we make no such distinction. In this case, as in the cases cited, the amount of the order was definitely fixed We rest the decision in this case therefore, as it was in the cases cited, squarely upon the principle of compliance with the terms of the contract.

"The vendor has the duty to comply with his order in kind, quality and amount. He does not comply with his contract by the tender or delivery of either more or less than the exact quantity contracted for or by sending the goods mixed with other goods. As a general rule the buyer is entitled to refuse the whole of the goods tendered, if they exceed the quantity agreed and the vendor has no right to insist upon the buyer's acceptance of all or upon the buyer's selecting out of a larger quantity delivered." Benjamin on Sales, Seventh Edition, sec. 689; 23 R. C. L. 1420.

Compliance with the contract authorizes appropriation of the goods to the contract by delivery to the carrier. Non compliance does not. In this case there was non compliance.

Was the duty of the plaintiffs to comply affected by their letter of September 16 and their not receiving the reply by wire requested? We do not think so. The letter stated "if for any reason you do not want these goods." The letter might be construed to mean that the plaintiffs could and would ship only a 16 dozen lot, and to inquire if the defendant wanted them. It can be construed, and

we think better so, as inquiring if the defendant wanted the excess four dozen.

With the first construction the letter is an express proposal for a new contract. Baron Parke in *Cunliffe* v. *Harrison* supra holds that a delivery of more than the contract quantity is itself a proposal for a new contract, "The delivery of more than the 10 (the number ordered) is a proposal for a new contract." The defendant here was under no legal obligation to inform the plaintiffs of acceptance or rejection of such proposal.

With the second construction the letter was notice that the plaintiffs were about to ship more than the order and would do so if the defendant did not immediately advise by wire not so to ship, in other words a notice of an intention not to comply with the contract unless they were notified by the defendant to comply. The defendant was under no legal obligation to give such notice.

In either view of the meaning of the letter therefore the defendant was under no legal obligation to reply to it. It becomes immaterial whether the defendant did or did not wire as requested.

The defendant had the right to refuse to accept the goods. The evidence is clear that he did so. The plaintiffs knew he did. The traveling salesman so testified and that, when he went to Van Buren in 1922 to see if he could adjust the matter and failed to do so, the goods as far as he knew were still at the station.

The defendant hauled the goods to his store under the arrangement, stated above, with Mr. Stevens as the plaintiffs' attorney. But the defendant's carrying out the agreement was conditioned on his acceptance of the goods. He examined them and refused to accept. There was therefore no sufficient delivery and acceptance under the new arrangement. It is immaterial therefore whether or not the attorney had authority to make such arrangement, which authority was denied by the plaintiffs.

In order to maintain this action it was necessary for the plaintiffs to prove delivery and acceptance. They did not do so. A new trial therefore should be granted.

*Motion sustained.*