### F. W. STOCK AND SONS *vs.* LOUIS SNELL.

Suffolk.    February 26, 1917. — May 22, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Contract*, Performance and breach.    *Evidence*, Competency, Remoteness.    *Damages*, For breach of contract.    *Pleading, Civil*, Declaration, Account annexed.

In an action for the alleged breach of a contract, which was made by an order in writing, by refusing to accept certain shipments of flour, it appeared that the defendant refused to accept the draft upon him of the plaintiff for the price of the flour because it included carrying charges which he asserted that he was not bound to pay, and the judge instructed the jury, without objection by either party, that, if in accordance with an "understanding or usage" that was known to the parties "it was contemplated between them that such a carrying charge should be made," the defendant was not justified in refusing to accept the draft because the carrying charges were included in it, but that, if there was no agreement of that kind, the defendant was under no obligation to accept the draft for a larger amount than the price of the flour and had a right to refuse to accept the draft and to refuse to receive the goods. The jury found for the defendant. *Held*, that the jury must have found as a fact that there was no custom, agreement or understanding outside the express terms of the contract in writing to justify the plaintiff in including the carrying charges in the draft and accordingly that the verdict should stand.

In an action by a corporation for an alleged breach of contract in refusing to accept a carload of flour, where the defence set up was that the flour was not merchantable nor fit for the purpose of making bread, it was *held* to be a material error for the presiding judge to refuse to allow an officer of the plaintiff to be asked by the plaintiff's counsel, "How is wheat selected to go into your mill?" after the counsel had explained that he wanted to show the very careful preparation that was practised in making the brand of flour required by the contract, the evidence called for by the question being admissible as the first step in proving that the flour was of the kind required by the contract and was merchantable and in good condition when delivered.

In the same case it was *held* that the judge erred in permitting the defendant to testify as to the price that he obtained for the flour that he received and sold and also in permitting him to answer the question, "What was your total

loss?", this evidence being incompetent and prejudicial to the plaintiff, because the measure of damages to the defendant for a breach of warranty by the plaintiff would be the difference between the actual value of the flour and what its value would have been if it had been of the quality required by the contract. Under R. L. c. 173, § 6, cl. 8, a plaintiff cannot recover under an account annexed for the breach of an executory contract. Affirming the previous decision in this case reported in 213 Mass. 449.

CONTRACT, by F. W. Stock and Sons, a corporation, for alleged breaches of two contracts in refusing to accept certain shipments of flour. Writ dated May 12, 1911.

The plaintiff's amended declaration was as follows:

"Count 1. And plaintiff says that on October 2, 1909, the defendant gave to the plaintiff a written order for the sale and delivery by the plaintiff to the defendant, F. O. B. at Fall River, Massachusetts, of five carloads of 'Mikota' brand flour, manufactured by the plaintiff, each car to contain two hundred and five barrels, at a price to the defendant of five dollars and fifteen cents per barrel less the freight charges for railroad transportation, and the defendant was to accept and receive the delivery of said five carloads of said flour between said October 2, 1909 and January 30, 1910, and the defendant was to pay the plaintiff for the said flour by acceptance and payment of drafts drawn by the plaintiff upon the defendant, on the arrival of each said shipment at said Fall River:

"That the plaintiff accepted the said order of the defendant and forwarded to the defendant at Fall River, Mass., said five carloads of said 'Mikota' brand flour, containing ten hundred and twenty-five barrels, and the defendant accepted, received, and paid the plaintiff for, four of said carloads of flour, containing eight hundred and twenty barrels, but the defendant has neglected and refused to carry out the terms of his said contract with the plaintiff, and refused to accept the delivery of the fifth carload of said flour, containing two hundred and five barrels, whereby the plaintiff is greatly damaged.

"Count 2. And the plaintiff says that on October 18, 1910, the defendant gave to the plaintiff a written order for the sale and delivery by the plaintiff to the defendant, F. O. B. at Fall River, Massachusetts, of ten hundred and twenty-five barrels of 'Mikota' brand flour, manufactured by the plaintiff, to be shipped in carload lots containing two hundred and five barrels to each car, at a price

to the defendant of five dollars and twenty-five cents per barrel less the freight charges for railroad transportation; the final and total shipment thereof to be made within ninety days from said October 18, 1910, and the defendant was to accept and receive the delivery of each shipment, and was to pay the plaintiff therefor as stated in said order:

"That the plaintiff accepted the said order of the defendant, and thereupon forwarded to the defendant two carloads of four hundred and ten barrels of said flour, which were accepted and received and paid for by the defendant in accordance with the terms of said order; and the plaintiff has always been ready and willing to perform its part of said contract, but the defendant has neglected and refused to carry out the terms of his said contract with the plaintiff, and has refused to accept and receive the delivery of the remaining six hundred and fifteen barrels of said flour, whereby the plaintiff is greatly damaged.

"Count 3.   And the plaintiff says the defendant owes it seven hundred and fifteen dollars and fifteen cents, according to the account hereto annexed."   The account annexed showed items amounting to $715.15, as set out in the report of the case at its previous stage in 213 Mass. 449, 451.

The matters set up in the answer are stated in the opinion.

The case first was tried before *Bell*, J., and the jury returned a verdict for the plaintiff in the sum of $581.68. The defendant alleged exceptions, which were sustained by this court in a decision reported in 213 Mass. 449.

The case was tried again before *Hitchcock*, J., and the jury returned a verdict for the defendant separately on the first and on the second count of the declaration, and also, by order of the judge, returned a verdict for the defendant on the third count. The plaintiff alleged exceptions, raising the questions which are stated in the opinion, where also the material facts and the rulings of the judge are set forth.

The case was submitted on briefs.

*H. L. Baker, H. A. Baker & H. S. Tay*, for the plaintiff.

*C. H. Cronin & J. F. Cronin*, for the defendant.

PIERCE, J.   The defendant refused to carry out the contract, dated October 2, 1909, set out in count one of the declaration, on the ground that the draft accompanying two bills of lading for the

flour contained extra charges outside the terms of the contract. The contract made no express provision for charges for carrying the flour beyond the contract period. As bearing upon this issue the presiding judge, without objection or exception by either party, instructed the jury that "the question is presented whether in the trade between these parties there is anything either by the custom of the trade or by knowledge on the part of persons dealing in this kind of goods . . . to show that there was any understanding or agreement between them that, if the flour was held beyond a time when by the terms of the contract it should have been ordered out, the plaintiff could charge carrying charges for the flour. If there was any such understanding or usage that was known to the parties and it was contemplated between them that such a carrying charge should be made, then of course the defendant would be liable for such carrying charge, and there would not be any justification on his part to repudiate the contract because carrying charges were included in the draft that he was required to accept before he could receive his fifth carload. If there was no agreement of that kind — if the defendant was not responsible for carrying charges, then the defendant was not under any obligation to accept the draft for a larger amount than that which was legally and properly due from him. He could refuse to accept it, and, if the acceptance of the draft was a condition upon which the goods should be delivered to him and he had a right to refuse to accept the draft, then of course he had a right to refuse to receive the goods and he would not be liable for any damages in consequence of failing to receive the fifth carload of flour." As the jury returned a verdict for the defendant, they must be taken to have found as a fact that there was no custom, agreement or understanding outside the express terms of the written contract to justify the inclusion in the draft of carrying charges. It follows that the verdict for the defendant as to the first count should stand.

The defendant also refused to carry out the contract dated October 18, 1910, set out in count two of the declaration, by refusing to receive and pay for the third carload of flour on the ground that the plaintiff warranted the flour to be O. K., merchantable, and fit for the purpose of making bread, and that the two carloads delivered under the contract were not O. K., merchantable, and fit for the purpose of making bread.

The defendant in his answer "asks that he may be allowed his damages in recoupment." The jury returned a verdict for the defendant.

As stated by the plaintiff its exceptions are as follows: 1. The exclusion of evidence tending to show the careful methods used by the plaintiff in making its flour. 2. The admission of evidence introduced by the defendant showing the price for which flour received by him was sold. 3. The admission of evidence showing the defendant's loss. We shall consider the exceptions in the above order.

As tending to prove that the flour delivered to the defendant was merchantable and also to meet and to refute the charge of the defendant that the flour delivered did not conform to the goods described in the written contract, the plaintiff was asked "How is wheat selected to go into your mill?" This question was objected to by the defendant, and, after a statement by the counsel for the plaintiff that "I want to show the very careful preparation that is made to make 'Mikota' flour," was excluded by the judge and an exception was duly taken by the plaintiff.

There is nothing to indicate that the evidence was excluded because not offered in proper order of proof or because its answer was too remote or would open unduly collateral issues. We take it that the exclusion was upon the broad ground that it was not relevant as tending to prove that the particular flour as delivered was merchantable and O. K.

As the first step in order of proof that the flour was "Mikota" flour, merchantable and O. K. when delivered, it was relevant to show the quality of the wheat when milled, the condition of the product when placed in suitable barrels at the mill, the shipment of the barrels containing the flour, and all facts tending to prove that the condition and quality of the flour was that of O. K. "Mikota" flour when it left the mill, and by direct and inferential testimony prove that the flour as delivered was the same in quality as it was when manufactured, barrelled, and shipped. We are of opinion that there was a clear connection between the collateral fact offered in evidence and the fact directly involved in the issue. 1 Greenl. Ev. § 11. See *Holcombe* v. *Hewson*, 2 Camp. 391. The first exception must be sustained.

We also are of opinion that the testimony of the defendant as

to the price obtained for the flour, and also the question "What was your total loss?" and the answer thereto, were incompetent on the issue of damages to be awarded to the defendant should the jury find a breach of warranty. Chief Justice Bigelow, in *Brown* v. *Bigelow*, 10 Allen, 242, said: "The rule of damages for a breach of warranty on the sale of chattels is well settled and familiar. It is the difference between the actual value of the article sold and the value of the same article if it had been such as the vendor warranted it to be. *Stites* v. *White*, 11 Met. 356, 358. *Tuttle* v. *Brown*, 4 Gray, 457, 460. The application of this rule is not changed nor modified by the fact that a purchaser of a warranted article has sold it for the same or even a greater price than that which he paid for it. *Medbury* v. *Watson*, 6 Met. 246, 257. . . . The disposition which a purchaser makes of property is an independent and collateral fact, having no connection with the bargain by which he acquired his title." *J. I. Case Plow Works* v. *Niles & Scott Co.* 90 Wis. 590, 606.

No evidence was offered to prove the difference between the actual value of the flour and its value had it been as warranted other than the testimony excepted to: to wit, that the defendant had never received any pay for fifty or sixty barrels of flour "because the flour was of poor quality," that he sold portions of the flour for $4.50, $4 and $2.50 per barrel, and that his total loss was "about $700." Besides being incompetent the evidence was manifestly highly prejudicial, and there is nothing in the charge to the jury to minimize its effect. These exceptions must be sustained.

The verdict for the defendant in the third count was directed rightly. *F. W. Stock & Sons* v. *Snell*, 213 Mass. 449.

*Exceptions sustained.*