Rock Glen Salt Company *vs.* Jacob N. Segal.

Suffolk.     November 8, 1917. — January 4, 1918.

Present: Rugg, C. J., Braley, Crosby, Pierce, & Carroll, JJ.

*Contract,* Construction.  *Sale,* Acceptance.  *Bill of Lading.*

Where a customer of a salt company ordered from the company a certain amount of salt at an agreed price "F. O. B. cars, Boston" and the salt company shipped by rail to Boston, under a bill of lading in which the company itself was named as the consignee, a larger amount of salt than that required by the customer's order and indorsed on the bill of lading an order to "Deliver to order of" the customer, this was *held* to indicate an intent on the part of the seller to reserve to itself the right of disposing of the salt until the railroad company in Boston in behalf of the seller and in the exercise of the authority conferred by the indorsement on the bill of lading should appropriate and deliver to the customer from the mass the quantity and kind of salt ordered by him.

Where, in attempted pursuance of a contract of a salt company to sell to a customer four hundred bags of salt at an agreed price, a railroad corporation as the agent of the salt company tenders to the customer the contents of a car containing not only the four hundred bags of salt called for by the contract but also fifteen barrels of salt that had been bought by another person and where the customer in order to obtain the salt would have been obliged to advance freight charges in excess of the amount that he had agreed to advance, the customer has the right under St. 1908, c. 237, § 44, cls. 2, 3, either to accept the part of the salt described in his contract "and reject the rest, or he may reject the whole," the customer not being bound to incur the trouble or risk of procuring a severance of the fifteen barrels from the four hundred bags of salt. Following *Rommel* v. *Wingate,* 103 Mass. 327.

CONTRACT for $322.56 as the price of certain salt, as described in a paragraph of the report which is quoted in the opinion, alleged to have been sold to the defendant. Writ in the Municipal Court of the City of Boston dated April 28, 1913.

The evidence at the trial in the Municipal Court is described in the opinion. The defendant asked the judge to make certain rulings, among which were the following:

"8. Where the seller delivers to the buyer goods which he contracted to purchase mixed with goods of a different description not included in the contract the buyer may reject the whole.

"9. The defendant was not bound to accept a greater quantity of goods than he ordered.

"10. The plaintiff by appropriating a greater quantity of goods than the defendant contracted to buy did not perform his contract and therefore cannot maintain this action."

The judge made the following findings and rulings: "I find that the invoice dated February 14 was received by the defendant on or before February 18; that the car containing four hundred bags and fifteen barrels of salt arrived in Boston February 18; that the Boston and Maine Railroad had then received the bill of lading indorsed by the plaintiff to the defendant's order; and that said company on or about February 19 sent notice to the defendant and that the salt was damaged February 26. I rule that the title had passed to the defendant before February 26, and that the salt was then at his risk. I refuse to give the rulings requested by the defendant."

The judge found for the plaintiff in the sum of $344.19, and at the request of the defendant reported the case to the Appellate Division. The Appellate Division made an order that judgment be entered for the defendant, and the plaintiff appealed.

The case was submitted on briefs.

*J. A. Curtin, W. F. Poole & A. S. Allen,* for the plaintiff.

*S. T. Lakson,* for the defendant.

PIERCE, J. "This is an action of contract to recover the purchase price of 300 burlaps 70/2s Table Salt at $1.05, 50 burlaps 50/3s Table Salt at $1.02 and 50 burlaps cotton 200s V.C.F. Salt at $0.74, amounting in all to $403, less freight, $80.44, net amount $322.56."

A "Memorandum of agreement" for the purchase and sale of "a supply of salt numbering five to ten cars" fixed the prices to be paid for different kinds of salt F. O. B. cars, Boston. The shipment in question was the last to be made under this contract and no question as to previous shipments is involved.

The defendant had previously ordered and received at different times during the period covered by the contract and the time following its extension, nine carloads of salt, and each time paid freight on the goods that he had ordered and deducted the freight charges from his invoice when he paid such invoice. It was understood between the parties that the goods were to be invoiced "less freight" and that the defendant should pay the freight charges on his goods when they arrived and deduct the amount from the bill when remitting.

On February 8, 1913, the plaintiff purchased of the Watkins Salt Company, Watkins, New York, the salt in bags ordered by the defendant. Two days later the plaintiff purchased fifteen barrels of salt ordered by another of its customers. The salt in bags and barrels was placed in a car and shipped at the plaintiff's request from Watkins, New York, to the Rock Glen Salt Company, Boston. The plaintiff took from the carrier a non-negotiable bill of lading. The salt was not consigned to the defendant, but on the contrary was consigned to the plaintiff itself, and was described in the bill of lading as "15 Bbls. 400 Sax Weight 64600 lbs." "Destination, Boston State of Mass." "Route B. & M. Car Initial Erie Car No. 111529." This bill of lading was indorsed "Deliver to order ·of Segal Bros. Rock Glen Salt Co. F. W. Relyea, Treas." It was then sent to and received by the Boston and Maine Railroad at Boston, but it was never delivered to or accepted by the defendant.

The car containing the bags and barrels of salt arrived in Boston at the Boston and Maine freight house on February 18, 1913. On February 19, 1913, the Boston and Maine Railroad notified the defendant in writing of the arrival of freight consigned to the Rock Glen Salt Company and stated that it was ready for delivery. The notice gave the "Car· Initial and Nos." as "E 111529" and the "Original Point of Shipment" as "Watkins.

N. Y. Via ER." It described the "Articles and Marks — Weight — Rate — Freight — Advances" as

"15 Bbl. ⎱ Salt      64600 ·    90.44       Total, 90.44."
400 sx. ⎰

Neither the bill of lading nor the notice stated the different kinds of salt that made up the four hundred bags nor the quantity of each kind. Nor did the defendant know that the fifteen barrels of salt had been put into the car with the four hundred bags to fill an order of another customer of the plaintiff.

When the defendant received the notice he had already received an invoice for salt as ordered, which showed a shipment over the Boston and Maine Railroad in "Car No. 111529 Erie," the amount of said invoice being $403 "less freight" $80.44, or $322.56. He compared the notice with the memorandum of his order, found that the salt stated in the notice did not correspond to the order given by him to the plaintiff, noticed that the freight charges were excessive for the quantity of salt ordered by him, and that they covered the whole quantity of salt contained in the car. He thereupon returned the notice to the "railroad's messenger." Without contradiction, so far as the record discloses, he testified "that there was no way in which the freight charges could have been apportioned or separated and if [he] the defendant had accepted any part of this car of salt he would have been obliged to pay the full amount of the freight charges on said car." He also testified that "he had a charge account with this railroad for freight due the railroad on shipments, and that actual payment by him to the railroad at the time of receiving possession of shipments was not necessary to receive such possession."

On February 26, 1913, the car of salt was damaged by fire at the Boston and Maine freight house and the defendant refused to receive the salt. The presiding judge ruled "that the title had passed to the defendant before February 26, and that the salt was then at his risk," and found for the plaintiff. Upon report, the Appellate Division of the Municipal Court of the City of Boston, ordered "Judgment for defendant," and the case is before this court on appeal from that decision.

We think the forwarding of the salt to Boston at the seller's expense, the taking of a bill of lading running to itself as consignee, and the provision in the contract "sells . . . at the fol-

lowing prices F. O. B. cars, Boston," indicate an intent of the seller to reserve to itself the *jus disponendi* of the salt until the railroad company in Boston on behalf of the plaintiff, and in the exercise of the authority conferred by the indorsement upon the bill of lading, should appropriate and deliver to the defendant from the mass the quantities and kinds ordered by the defendant. *First National Bank of Cairo* v. *Crocker*, 111 Mass. 163, 167. *Sawyer Medicine Co.* v. *Johnson*, 178 Mass. 374. St. 1908, c. 237, § 19, Rule 5. The question is, Was the notice of the Boston and Maine Railroad an appropriation and proper tender on behalf of the plaintiff of the salt to the defendant in performance of the contract?

In this regard it is to be noticed that the railroad company was not instructed by the bill of lading or otherwise of the kind or quantity of salt required to fill the defendant's order. Nor, so far as appears, was there anything about the bags or barrels to indicate the quality of their contents. What the railroad did was to tender the contents of a car, — a quantity of goods larger than the defendant agreed to purchase and on which the defendant would have been obliged to advance freight charges in excess of the amount he agreed to advance.

St. 1908, c. 237, § 44, contains among others, the following provisions:

"(2) Where the seller delivers to the buyer a quantity of goods larger than he contracted to sell, the buyer may accept the goods included in the contract and reject the rest, or he may reject the whole."

"(3) Where the seller delivers to the buyer the goods which he contracted to sell mixed with goods of a different description not included in the contract, the buyer may accept the goods which are in accordance with the contract and reject the rest, or he may reject the whole."

These sections express the effect of *Rommel* v. *Wingate*, 103 Mass. 327, *Levy* v. *Green*, 1 El. & El. 969, *Rylands* v. *Kreitman*, 19 C. B. 351, *Perry* v. *Mount Hope Iron Co.* 16 R. I. 318.

In the case at bar the defendant, upon receiving the notice and invoice, could have assumed properly that the fifteen barrels of salt had been sent by the seller to be delivered by the railroad to him. The bill of lading in terms directed the railroad company

to do so. Upon this assumption, if he did not intend to pay for the whole car, he must have determined whether to take a part and reject a part, or reject the whole. If he desired to have the part only which he had ordered, it remained to determine whether he would become responsible for the entire freight charges and look to the purchaser of the fifteen barrels or to the seller for his repayment. If it were a fact that the defendant could have paid the proportionate charges, that fact does not appear in the report and cannot be assumed. We are of opinion that the severance of the four hundred bags from the fifteen barrels involved pecuniary "trouble" or "risk" to the defendant. *Levy* v. *Green, supra.*

It follows that the title never passed to the defendant.

*Judgment for the defendant affirmed.*