F. W. STOCK AND SONS *vs.* LOUIS SNELL.

Suffolk.    November 8, 1921. — March 1, 1922.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Sale*, Rescission.    *Contract*, Performance and breach.

At the trial of an action for a breach of a contract whereby the plaintiff sold a certain kind of flour to the defendant, it appeared that the defendant rejected a carload of the flour which contained some barrels of a different brand than that specified in the contract of sale.    There was evidence that the barrels of the different brand were sent by the plaintiff under an express agreement with the defendant and that, upon a refusal of the defendant to take them, the plaintiff "eliminated" them from the car and ordered a sight draft upon the defendant reduced by the amount of their price.    The judge instructed the jury in accordance with G. L. c. 106, § 33, cl. 3, and stated that, if the plaintiff included in the car the flour of the different brand without orders from the defendant, the defendant was under no obligation to sort it out from the other flour but had a right to reject the entire carload; and refused to rule that, as a matter of law, the defendant had a right to reject the entire carload.    The jury found for the plaintiff.    *Held*, that in the circumstances the ruling properly was refused.

At the trial of the action above described, it appeared that there was further flour called for by the contract of sale beyond that included in the car rejected by the defendant, and there was evidence warranting a finding that the plaintiff already had manufactured the flour to fulfil the balance of the contract.    The judge ruled that "upon the refusal of the defendant to receive any more flour under the contract, the plaintiff was under the duty of not manufacturing any more flour for him and of not incurring any further expense on his account" and refused to give rulings, relating to damages, which were based upon an assumption that, after the defendant refused to accept the carload of flour, the plaintiff proceeded to purchase and mill wheat with which to fill the remainder of the defendant's order.    *Held*, that the defendant was fully protected by the rulings made and that the refusal to give the further rulings requested was warranted.

CONTRACT for breach of an agreement to purchase of the plaintiff one thousand and twenty-five barrels of flour, the defendant having accepted and paid for only four hundred and ten barrels.    Writ dated May 12, 1911.

In the Superior Court, the action was tried before *Keating*, J. Material evidence is described in the opinion.    At the close of the evidence, the defendant asked for the following, among other rulings:

"2. That on all the evidence the plaintiff is not entitled to recover for any damages for failure of the defendant to take the third car of flour shipped to him on November 30, 1910."

"5. That the right of the defendant to refuse to receive the third car arose at the time of the arrival of the car, and that the elimination of any charge for the Rosebud Flour at a later date did not put the defendant under obligation to receive the car at said later date. Having once refused to receive it for good cause, his rights became fixed and no later action by the plaintiff could again put him under obligation to take it unless he consented to said later action."

"7. If the plaintiff included in the third car, twenty-five barrels of Rosebud Flour without orders from the defendant, and the defendant in order to receive the Mikota Flour would be compelled to pay additional charges for freight or demurrage, he was under no legal duty to do so and could rightfully refuse to receive the Mikota Flour shipped in said car."

"16. That if the defendant wrongfully refused to accept the third car of flour and the remaining flour, the plaintiff was under the duty of at once selling said third car at Fall River or the nearest available point at the best possible price and of not manufacturing any more flour for him.

"17. That as the plaintiff, at the time of the refusal of the defendant to accept any more flour under the contract, had not manufactured the flour for the defendant and did not manufacture any flour for the purpose of filling the defendant's contract, its damages, if any, are only such as arise from the breach of an executory contract to purchase goods, and directly and naturally result from the breach of said contract, and the burden of proof is on the plaintiff to prove said damages, if any.

"18. That in reference to the four hundred and ten barrels which the plaintiff had not manufactured when the defendant notified it that he refused to go on with the contract, the defendant is liable to the plaintiff for no greater damage than the plaintiff would have suffered if it did nothing toward carrying out the contract after receiving notice from the defendant of his refusal to proceed."

"27. That if the jury find that the contract between the parties ended on January 17, 1911, and that the defendant before or on

said date had notified the plaintiff that he would receive no more flour, the rights of the parties for breach of the contract, if any, became fixed as of that date.

"28. That as soon as the plaintiff knew or was informed by the defendant that the defendant refused to receive the third car of flour, the plaintiff was then under the duty of selling the flour and the measure of damages must be determined as of that date. The plaintiff could not delay until there was a change in the market and place the loss on the defendant. His duty was to be reasonably active to save any loss."

"34. That on the evidence the plaintiff is not entitled to recover for demurrage and freight on said flour as claimed in his declaration."

The foregoing rulings were refused. Other rulings, asked for by the defendant and given by the judge, are described in the opinion. The jury found for the plaintiff in the sum of $738.78; and the defendant alleged exceptions.

The case was submitted on briefs.

*C. H. Cronin & W. C. Jaycox,* for the defendant.

*W. H. Garland,* for the plaintiff.

DE COURCY, J. The plaintiff is engaged in the business of milling flour in Michigan, and brought this action against the defendant, a wholesale flour dealer in Fall River, to recover damages for breach of a contract for the sale and purchase of certain flour. The contract was evidenced by a memorandum dated October 18, 1910. It called for one thousand and twenty-five barrels of Mikota Flour at $5.25 per barrel, to be shipped in instalments and paid for on arrival of the goods at Fall River with bill of lading attached. Pursuant to the terms of the contract the plaintiff forwarded to the defendant in October and November two carloads of two hundred and five barrels each, and the defendant accepted and paid for them. In December a third carload was shipped, containing two hundred and five barrels of Mikota flour and twenty-five barrels of Rosebud (pastry) flour; but the defendant refused to accept it. After much correspondence, the plaintiff sold the flour elsewhere at the market price, which was lower than the contract price. This action for the loss and for demurrage and transportation charges has been twice before this court; see 213 Mass. 449; 226 Mass. 499. The third trial was upon an

amended declaration and answer, and the jury returned a verdict in favor of the plaintiff. The defendant's exceptions all relate to the refusal of the trial judge to give certain rulings as requested.

The second, fifth, seventh and thirty-fourth requests are in support of the defendant's contention that he was entitled to reject the third carload because it contained the twenty-five barrels of Rosebud flour, not called for by said contract. The provision of the sales act, St. 1908, c. 237, § 44, cl. 3 (see now G. L. c. 106, § 33, cl. 3), is: "Where the seller delivers to the buyer the goods which he contracted to sell mixed with goods of a different description not included in the contract, the buyer may accept the goods which are in accordance with the contract and reject the rest, or he may reject the whole." To the same effect see *Rommel* v. *Wingate*, 103 Mass. 327; *Rock Glen Salt Co.* v. *Segal*, 229 Mass. 115. The trial judge instructed the jury in accordance therewith. And he gave the defendant's sixth request which was: "If the plaintiff included in the third car twenty-five barrels of Rosebud flour without orders from the defendant, the defendant was under no obligations to sort out the Rosebud from the Mikota flour but has the right to refuse the entire carload." The difficulty with the defendant's claim is that on the evidence the jury could find, and presumably did find, that the plaintiff sent the Rosebud flour on trial under an express agreement with the defendant; and that, upon Snell's refusal to take this pastry flour, the plaintiff "eliminated" it from the car, and ordered the bank to reduce the draft by $105, the price charged for it. The judge rightly refused to give these requests, and left the issue to the jury under proper instructions.

The sixteenth, seventeenth, eighteenth and twenty-seventh requests, relating to damages, apparently are based upon an assumption that, after the defendant refused to accept the carload of flour, the plaintiff proceeded to purchase and mill wheat with which to fill the remainder of the defendant's order. See sales act, G. L. c. 106, § 53, cl. 4. *Centennial Electric Co.* v. *Morse*, 227 Mass. 486, 490. The evidence, however, would warrant the jury in finding that the plaintiff had on hand a quantity of wheat sufficient to fulfil the order at the time when the contract was made; and that the price agreed on for this flour was based on the then market price of wheat plus the cost of milling, less the value of

the mill feed obtained in the operation. In fact the jury could find that the plaintiff had already manufactured the flour to fulfil the balance of the contract. Among other things it appeared that the remainder of the flour contracted for was sold early in March, 1911, to a dealer in Springfield, and at the same market value as that prevailing during January and February, there being no available market in Fall River for the flour which the defendant refused to accept. The court fully protected the defendant's rights on this branch of the case by ruling that "upon the refusal of the defendant to receive any more flour under the contract, the plaintiff was under the duty of not manufacturing any more flour for him and of not incurring any further expense on his account."

On the issue of the quality of the flour, the judge told the jury, as requested by the defendant: "29. In order to recover in this action, the burden of proof is on the plaintiff to establish by a fair preponderance of the evidence that this flour delivered by it to the defendant was O.K., merchantable, wholesome and fit for making bread; that the defendant refused to receive the flour without justifiable reason, and that it suffered damages thereby." He also instructed them: "22. Unless the plaintiff was ready and willing to deliver the balance of the flour under the contract of October 18, 1910, and requested the defendant to take delivery, the defendant was not liable to any loss caused by his not taking said flour;" and "25. If the plaintiff is entitled to damages because of the defendant's refusal to take the third car, the measure of the damages is the difference between the contract price of $5.25 per barrel and the market value of the flour when the defendant refused to take the flour."

The charge covered every aspect of the case accurately and adequately. We find no error in the conduct of the trial.

*Exceptions overruled.*